UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JONATHAN MAYZICK,

        Petitioner/Defendant,

                           MEMORANDUM AND ORDER

       -against-               16-CR-0429(JS)

UNITED STATES OF AMERICA,

              Respondent.
----------------------------------X
APPEARANCES
For Petitioner/
Defendant:         Jonathan Mayzick, <u>Pro se</u>
               88903-053
               USP Coleman II
               U.S. PENITENTIARY
               P.O. Box 1034
               Coleman, Florida  33521

For Respondent/
Government    :   Michael R. Maffei, Esq.
               United States Attorney's Office
               Eastern District of New York
               610 Federal Plaza
               Central Islip, New York  11722

SEYBERT, District Judge:

      Presently before the Court are two <u>pro se</u> motions brought by Joanathan Mayzick ("Mayzick", "Petitioner" or "Defendant"): (1) a Section 2255 habeas petition seeking to vacate, set aside, or correct Mayzick's sentence (hereafter, the "Petition") (<u>see</u> Petition, ECF No. 168);[1] and (2) a motion seeking a sentence

---

[1]  In conjunction with his Petition, Mayzick also brings a Motion for Appointment of Counsel (<u>see</u> Appoint. Motion, <u>attached to</u> Petition at ECF p.33), and a Motion to Amend the Petition (<u>see</u> Amend. Motion, ECF No. 182).  In the context of ruling upon the

reduction pursuant to the First Step Act (the "FSA", the "ACT" or the "Frist Step Act"), 18 U.S.C. § 3582(c)(1)(A) (hereafter, the "Motion").[2]   The Government opposes both the Petition and Motion. (See Petition Opp'n, ECF No. 171; Motion Opp'n, ECF No. 178.)  For the following reasons, both the Petition and Motion are DENIED in their entireties.

BACKGROUND

Prior to this case (hereafter, the "Instant Case"), in this District and pursuant to a single-count indictment, Mayzick was indicted and convicted of conspiracy to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii); the case was United States v. Winslow, No. 16-CR-0028 (hereafter, the "Winslow Case"), over which case the Honorable Denis R. Hurley presided.[3]   To fully address various

---

Petition, the Court will also address both of these related Motions.  (See infra at 30-33 (re: Appointment Motion; at 33-37 (re: Amendment Motion).)

[2]   To the extent Mayzick's Motion, the Government's Motion Opposition or this decision uses the terminology "compassionate release", the Court notes that phrase is not contained in the First Step Act; rather it is one coined by the courts to characterize a reduction in sentence pursuant to said Act.  See, e.g., United States v. Shakur, 498 F. Supp. 3d 490, 492 (S.D.N.Y. 2020); see also United States Brooker, 976 F.3d 228, 237 (2d Cir. 2020) (stating the phrase "compassionate release is a misnomer" as the First Step Act "in fact speaks of sentence reductions").

[3]   Judge Hurley has since retired.  Further, the Instant Case was initially assigned to Honorable Sandra J. Feuerstein; it was reassigned to the undersigned on March 7, 2023.  (See Case Docket, Mar. 7, 2023 Elec. ORDER REASSIGNG CASE.)

2

arguments Mayzick raises in his Petition and Motion, it is necessary for the Court to provide background regarding the Winslow Case and sequence of events which unfolded before Judge Hurley, as well as during the time-frame of that case, together with the background of the Instant Case. (Compare, e.g., Instant Case, Interim Order re: Strike Motion, ECF No. 103, at 3-4 (recognizing "the sequence of events in the Winslow Case may be a critical component in deciding" issues in the Instant Case, therefore ordering the Government provide the Court with various documents from the Winslow Case for its review "to ensure a fuller understanding of the pertinent events in that case").)

I.    Regarding the Winslow Case

A.    The Underlying Crimes & Institution of the Winslow Case

Mayzick was a leader of a Bloods gang set known as the "Nine Trey" (hereafter, the "Gang"), which operated in the Heights neighborhood of Hempstead, New York. (See Instant Case, Sept. 25, 2018 Order (hereafter, the "Dismissal Denial Order"), ECF No. 77, at 2.) Mayzick engaged in street-level narcotics trafficking on behalf of the Gang. On November 14, 2014, local law enforcement arrested Mayzick for his drug trafficking activities that occurred between April 2014 and November 2014 (hereafter, the "Winslow Case Narcotics Activities"); additionally, a search warrant was executed at Mayzick's residence where narcotics and firearms were seized. On January 21, 2016, Mayzick was federally charged for

3

the Winslow Case Narcotics Activities; a superseding indictment was entered on February 11, 2016.  (See Winslow Case, Superseding Indictment, ECF No. 23.)  Mayzick entered a plea of not guilty. (See id., Arraignment Minute Entry, ECF No. 25.)

B.    The Plea and Relevant Subsequent Events

On April 8, 2016, and pursuant to a plea agreement (hereafter, the "First Plea Agreement"), Mayzick changed his plea to guilty.  (See id., Change-of-Plea Minute Entry, ECF No. 38.) Among other things, Mayzick agreed: (1) to plead guilty to the charged Winslow Case Narcotics Activities; (2) he understood the Government would provide the Court and the Probation Department ("Probation") with information relevant to sentencing, including criminal activity engaged in by Mayzick; and (3) the Government's Sentencing Guidelines estimated calculation of 121 to 151 months, to which Mayzick stipulated, was not binding on the Government, Probation or the Court.  (See First Plea Agmt., Ex. A., attached to Petition Opp'n.)  Mayzick also understood, pursuant to the First Plea Agreement, the Government: (4) agreed not bring further criminal charges against Mayzick for the Winslow Case Narcotics Activities; but (5) was not barred from using the Winslow Case Narcotics Activities "as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq." (i.e., a RICO prosecution); and (6) based upon the

4

information the Government knew at the time it entered the First Plea Agreement, it would not (i) take a position regarding where within the Court-determined Guidelines range Mayzick's sentence should fall, or (ii) make an upward-departure motion.  (See id.) "The [First Plea A]greement made no mention of any murder plot." (Dismissal Denial Order at 4.)

Approximately three weeks later, on April 28, 2016, one of Mayzick's former Gang members agreed to cooperate with the Government and pled guilty pursuant to a cooperation agreement. (See Petition Opp'n at 6.)  The Government maintains that, without this cooperation, it had not been in a position to charge Mayzick with racketeering offenses.  (See id.)

Further:

[w]hile the Winslow Case was pending, on August 2, 2016, two of Mayzick's "crew", Naree Barnes and Khalil Brown, were indicted and charged with, inter alia, crimes based upon their roles in the October 2014 Attempted Murder [of rival gang member Jaleel Jones]. See United States v. Naree Barnes, et al., No. 16-cr-428 (SJF) (E.D.N.Y. 2016). Ultimately, they each pled guilty to discharging a firearm during a crime of violence, and attempted murder and attempted assault with a dangerous weapon and were each sentenced to 120 months of imprisonment. (See id.) Defendant was neither indicted nor charged in that case.
    Separately, but also on August 2, 2016, MClen, another Bloods gang member (see Dismissal [Denial] Order at 2), was charged by juvenile information with, among other crimes, the October 2014 Attempted Murder.   See [Instant Case]. According to the Government, MClen's juvenile status precluded it from

seeking an indictment against MClen or the Defendant [at that time].    (See Dismissal [Denial] Order at 8.)

(Instant Case, Jan. 2019 Strike Order (hereafter, the "Strike Order"), ECF No. 116, at 6 (citation modified).)

C.    The *Winslow* Case PSR, the Government's Revised Sentencing Proposal, PSR Objections, and PSR Addendums

On June 26, 2017, Probation issued its Winslow Case PSR. In said PSR, "Probation determined that Mayzick was a career offender [pursuant to the Guidelines] and that the Sentencing Guidelines range was between 262 and 327 months of imprisonment." (Instant Case, Dismissal Denial Order at 4; see also Strike Order at 4 (same).)

Three months later, on September 29, 2017, the Government sent Mayzick's counsel[4] an email:

> informing counsel, inter alia, that the Government was "in a position to charge Mayzick with RICO, including predicate acts of attempted murder, conspiracy to commit murder against rival gang members and narcotics conspiracy, as well as substantive VICAR and [§] 924(c) offenses, including at least one shooting," on the basis of learning that: "between September 2013 and October 2014[,] Mayzick was one of the leaders of the Bloods in the Heights section of Hempstead"; after a September 2013 murder [of a Gang associate,]

---

[4] "Defendant's counsel in the Winslow Case was Leonard Lato, Esq." (Strike Order at 4 n.4.)  He was not Mayzick's attorney in the Instant Case.  (See Instant Case, Case Docket (listing Joseph W. Ryan, Jr., Esq., as Defendant's counsel).)  Attorney Lato has since passed away.    See, e.g., https://www.legacy.com/obituaries/name/leonard-lato-obituary?pid=190283425 (last visited Mar. 4, 2026).

6

"a gang war broke out between the Bloods and the Outlaws [a rival gang]; and "Mayzick directed numerous shootings and both he and his house were shot at on multiple occasions". The Government conveyed that it would be seeking Probation's recommended Sentencing Guidelines range of between 262 and 327 months based on the Defendant's career status, but proposed that "[i]f Mr. Mayzick does not contest the facts in the PSR, acknowledging he was a high ranking member of the Bloods and is sentenced to at least 18 years, [the Government] will not pursue additional [RICO] charges." [Hereafter, the "Revised Sentencing Proposal".]

(Stike Order at 4 (internal citations omitted).)  Mayzick declined the Government's Revised Sentencing Proposal.  (See id.)

"The Government also filed objections to the PSR, including a supplemental sentencing submission" regarding the October 2014 Attempted Murder of Jones, a gangs-related murder. (Dismissal Denial Order at 5; see also Strike Order at 5.)  Of relevance, it detailed Mayzick's involvement in said Attempted Murder, "e.g., informing MClen where to locate the firearm used in the [October 2014 Attempted Murder] shooting; instructing MClen to use a ski mask to hide his identity; and, after the shooting, advising MClen how he should dispose of the weapon."  (Strike Order at 5.)

In response, Probation issued an addendum to its PSR (hereafter, the "PSR Addendum"), which included, verbatim, the Government's narrative about Mayzick's membership in the [] [G]ang, including that his narcotics distribution was done in furtherance of his [G]ang membership and describing other

7

gang-related and uncharged criminal conduct in which Mayzick participated. The Defendant objected to the PSR Addendum, arguing, inter alia, that the Government had not charge[d] Mayzick with the violent acts with which it charged others and only mentioned them just prior to Probation's initial issuance of its PSR and that since these alleged acts of violence were not similar to his [Narcotics Trafficking] conviction, they could not be considered for either a horizontal departure of his criminal history category, i.e., allowing an increase in the criminal history category where there is reliable information indicating it is underrepresented or a vertical departure since misconduct unrelated to the offense of conviction cannot form the basis for a [§] 5K2.0 departure.

(Id. (internal citations omitted).)

On December 5, 2017, Mayzick filed a Sentencing Memorandum, in which he rejected the Government's Revised Sentencing Proposal and requested a sentence at the statutory mandatory minimum of 120 months' imprisonment. (Winslow Case, Def. Sent'g Memo (filed under seal).)

Mayzick also claimed [] the [G]overnment's inclusion of information regarding his [G]ang membership was an "irrelevant smear." On December 11, 2017, the [G]overnment provided the additional information to Probation regarding Mayzick's involvement in [the Gang]. On January 16, 2018, Probation filed an Addendum to the PSR, which included the information about Mayzick's [G]ang activities. On January 19, 2018, Mayzick objected to the inclusion of the information about his [G]ang activities . . . .

(Petition Opp'n at 7 (internal citation omitted).) Mayzick:

argued "the Government not only declined to charge Mayzick with the violent acts for which it charged others [i.e., the alleged "October 2014 Attempted Murder"], it failed even to mention the acts to [P]robation . . . prior to June 26, 2017, the date [it] released the [PSR]. Rather, the Government waited until three days before what had been Mayzick's scheduled sentencing date to speak." (Winslow Case, ECF No. 123 at 3.) Moreover, he asserted that since these alleged acts of violence were not similar to his [Narcotics Trafficking] conviction, they could not be considered for either a horizontal departure of his criminal history category, i.e., allowing an increase in the criminal history category where there is reliable information indicating it is underrepresented (see id. at 4), or a vertical departure as misconduct unrelated to the offense of conviction cannot form the basis for a [§] 5K2.0 departure (see id. at 4-5).

(Dismissal Denial Order at 6-7; see also Strike Order at 5.)

D.    The Sentencing

At his January 25, 2018 sentencing, the Defendant reiterated his opposition to the information in the PSR regarding his alleged [G]ang affiliation and related violent criminal activities and requested a Fatico hearing. However, Judge Hurley informed the parties that he would not consider the Defendant's alleged [G]ang membership or related violent [G]ang activities in fashioning Defendant's sentence for his Narcotics [Trafficking] Conviction. [(See Winslow Case, Sent'g Tr., ECF Doc. No. 133, at 6:6-14 ("I don't think it would be appropriate to basically have a trial on whether this defendant, Mr. Mayzick, was or is a leader of a gang. If he is, and there is evidence of associated criminality, I would think he should be charged in an accusatory instrument. I think that would be a better way . . . to pursue this matter rather than to have it as an addendum to a sentencing proceeding.").)]

9

> The Defendant did not contest his status as a Career Offender. He asked to be sentenced to the mandatory minimum, ten years' imprisonment, while the Government requested Defendant be sentenced from 262 to 327 months' imprisonment; Judge Hurley sentenced Mayzick to 162 months' Imprisonment.

(Dismissal Denial Order at 7; see also Strike Order at 5-6.)

E.    The Appeal

Notwithstanding the appeal waiver to which he agreed in his First Plea Agreement, on February 11, 2018, Mayzick filed a Notice of Appeal. (See Winslow Case, ECF No. 132.) Unsurprisingly, based upon said appeal waiver, the Circuit Court granted the Government's motion to dismiss the appeal regarding Mayzick's conviction and term of imprisonment. See United States v. Mayzick, No. 18-0408, slip op. (2d Cir. Aug. 10, 2018) (further ordering Government's dismissal motion be "construed as seeking summary affirmance with respect to [Mayzick]'s appeal of his term of supervised release, forfeiture, and special assessment, and, so construed," granting said motion).[5]

[Proceed to next page.]

---

[5] Also docketed in the Winslow Case docket as the Second Circuit's MANDATE. (See Winslow Case, ECF No. 142.)

II.  Regarding the Instant Case

A.  The Case is Instituted; Superseding Indictments, Plea Offer, and Court Rulings

1.  The Case is Instituted

As stated, the Instant Case was initiated in August 2016 with a juvenile information brought against Mayzick's co-defendant, MClen. (See Instant Case, Juvenile Information, ECF No. 2.) MClen was a fellow Gang member of Mayzick's and was charged with various RICO counts arising out of his participation in a series of shootings targeting others believed to be rival gang members (which the Government characterizes as a gang war (see Petition Opp'n at 1-4)), e.g., conspiracies to murder and assault with dangerous weapons; attempted murder; assault and attempted assault with dangerous weapons; threatening to commit crimes of violence; and discharging firearms during crimes of violence, in violation of 18 U.S.C. §§ 1959(a)(3)-(6), 924(c)(1)(A)(i)-(iii), 924(c)(1)(C)(i).  In October 2016, the Government moved to transfer the case to district court to treat MClen as an adult. (See Motion to Transfer, ECF No. 17.) After conducting an evidentiary hearing, on April 26, 2017, Judge Feuerstein issued an order granting the transfer motion, which MClen appealed. (See Transfer Order, ECF No. 29; Notice of Appeal, ECF No. 30.) Approximately a year later, on March 1, 2018, the Second Circuit affirmed Judge Feuerstein's decision that MClen

11

could be prosecuted as an adult.  See United States v. B.M., No. 17-1501-CR, slip op. (2d Cir. Mar. 1, 2018).[6]

>    2.    Superseding Indictments, the Plea Offer, and Court Rulings

Thereafter, on March 27, 2018, the Government brought its Superseding Indictment against MClen, as an adult, and Mayzick, charging them with the numerous violent crimes in aid of racketeering (i.e., RICO crimes) and firearms offenses, in violation of 18 U.S.C. §§ 1959 and 924(c), as well as narcotics trafficking crimes. (See Instant Case, Indictment, ECF No. 43.)

"On June 4, 2018, the [G]overnment relayed a plea offer to Mayzick [in the Instant Case], indicating that it would recommend a sentence of five years' imprisonment consecutive to the 162 months imposed on the [Narcotics Trafficking] conviction. Mayzick rejected the offer . . . ." (Petition Opp'n at 8.) Instead, Mayzick "moved to dismiss the indictment claiming vindictive prosecution and arguing that certain crimes were not crimes of violence." (Id.) After the Dismissal Motion was fully briefed, Judge Feuerstein issued her Dismissal Denial Order. (See ECF No. 77.)

> [O]n October 10, 2018, the Government filed a second Superseding Indictment against Mayzick, charging:
>
> > **Count One:** Racketeering (identifying seven predicate acts);

---

[6] Also docketed in the Instant Case docket as the Second Circuit's MANDATE. (See Instant Case, ECF No. 42.)

12

**Count Two:** Racketeering Conspiracy;
**Count Three:** Conspiracy to Murder and Assault Rival Gang Members with Dangerous Weapons – Outlaws;
**Court Four:** Discharging Firearms During a Crime of Violence (re: Count Three);
**Count Five:** Conspiracy to Murder and Assault Rival Gang Members with Dangerous Weapons – Crips;
**Count Six:** Discharging Firearms During a Crime of Violence (re: Count Five);
**Count Seven:** Attempted Murder and Attempted Assault with Dangerous Weapons of John Doe No. 1; and
**Count Eight:** Discharging Firearms During a Crime of Violence (re: Count Seven).

(Strike Order at 7 (citing Subject Indictment, ECF No. 88).) Defendant moved "to strike 'all racketeering acts which rest[ed] upon his crack dealing conduct which served as the basis for his 13-year sentence' for his Narcotics [Trafficking] Conviction in the Winslow Case and which, he argue[d], the Government [sought] to use as predicate racketeering acts in support of its racketeering counts charged against him in the subject Superseding Indictment." (Id. at 1 (citing the Strike Motion, ECF No. 97); see also Petition Opp'n at 8 (stating, in his Strike Motion, Mayzick sought "the dismissal of RICO predicate acts based on Mayzick's drug-dealing activities (some of which served as the basis for his prior [Narcotics Trafficking Conviction]) on double jeopardy grounds and based on alleged bad faith by the [G]overnment in the plea negotiation process" (emphasis added)).) After (a)

13

the Strike Motion was fully briefed, (b) a hearing was held on said motion, and (c) the parties submitted additional documents for the Court's consideration, Judge Feuerstein denied the Strike Motion in relevant part.  (See Strike Order.)

B.    The Plea and the Plea Agreement

On the eve of trial, February 1, 2019, and pursuant to a plea agreement (hereafter, the "Second Plea Agreement"), Mayzick pled guilty to Count Three of the Second Superseding Indictment, i.e., the "Outlaws VICAR Murder Conspiracy" count.  (See Plea Hr'g Minute Entry, ECF No. 125; Plea Hr'g Tr., ECF No. 130; see also Second Plea Agmt., Ex. B, attached to Petition Opp'n.).)  Of significance, by entering into the Second Plea Agreement, Mayzick agreed that "[t]he sentence imposed by the Court may run consecutively to any other sentence the [D]efendant is currently serving, including, but not limited to, the sentence imposed upon the [D]efendant in the [Winslow Case]."  (Second Plea Agmt., ¶1 (emphasis added).)  Pursuant to the Second Plea Agreement, Petitioner also: (1) agreed to allocate to, inter alia, in essence, as a Gang member, engaging in a year-long gang war with the rival Outlaws gang, which war involved attempted murder and murder (see id. at ¶1(i)-(iv)); (2) acknowledged his understanding that the Court could consider any information concerning his background, character, and conduct "for the purpose of imposing an appropriate sentence" (id. at ¶2 (quoting 18 U.S.C. § 3661)); (3) stipulated

14

to the Government's Guidelines range estimates (see id.); and (4) agreed to waive his right to appeal or otherwise challenge his conviction or sentence if the Court imposed a term of imprisonment of 120 or fewer months (see id. at ¶3).  Mayzick's plea was made before the Magistrate Judge.  (See Plea Hr'g Minute Entry; see also Plea Hr'g Tr.)  Of relevance, one of the issues addressed in detail with Mayzick was that the sentence which would be imposed for the conviction could be imposed concurrently or consecutively and that such decision was for the District Judge to make.  (See Plea Hr'g Tr. at 14-17.)   Ultimately, the Magistrate Judge recommended the Court accept Mayzick's guilty plea (see Plea Hr'g Minute Entry), which it did on March 13, 2019.  (See Order, ECF No. 132 (ordering acceptance of Magistrate Judge's recommendation that "the plea was knowingly and voluntarily entered by the defendant, with a full understanding of his rights and the consequences of the plea [for] which there is a factual basis").)

C.    The PSR, PSR Objections, and PSR Addendums

Probation issued its Instant Case PSR on August 23, 2019. (See ECF No. 138 (under seal).)  While highlighting the conduct charged in the Instant Case covered from September 2013 through October 2014 and between members of the Outlaws and members of the Gang, the PSR also addressed further conduct between the Gang and the Crips, another rival gang.  (See id. ¶¶1, 3-39.)  Continuing, the PSR made clear that this gangs-related conduct had not been

15

considered by Judge Hurley in the Winslow Case.  (See id. at ¶40 (stating "Judge Hurley declined to consider the [delineated gangs-related] conduct in determining the appropriate sentence for" Mayzick's Winslow Case Narcotics Activities); see also id. at ¶126 (in addressing Mayzick's criminal history, as to the Winslow Case, stating "it is noted that th[e] conduct[, i.e., the Winslow Case Narcotics Activities,] is wholly separate and distinct from the conduct which comprises the instant offense and is not considered relevant conduct").)

Similar to the Winslow Case, in the Instant Case, Probation determined Mayzick was a career criminal.  (See id. at ¶129.)  With a total offense level of "42" and a Criminal History Category of VI (based upon his career criminal status), but for the applicable 120-month statutory maximum, Mayzick would be subject to a Guidelines range of 360-months-to-life imprisonment. (See id. at ¶161.)  Probation also explained Mayzick had an undischarged term of imprisonment for his Winslow Case conviction; therefore, "per USSG §5G1.3(d), the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."  (Id. (emphases added).)

As the Government accurately accounts:

16

On October 28, 2019, Mayzick submitted objections to the PSR regarding the inclusion of certain shootings referenced therein, Mayzick's leadership role in [the Gang], the multiple victim adjustments and his criminal history calculation. On December 20, 2019, the [G]overnment provided Probation with its response to Mayzick's objections. On February 7, 2020, Probation issued an Addendum to the PSR. [(See ECF No. 144.)] In the First Addendum, Probation largely rejected [Mayzick]'s objections, including Mayzick's contention that his prior [Narcotics Trafficking] conviction should not be considered as a separate offense from the [instant] VICAR murder conspiracy for purposes of the calculation of his criminal history.

(Petition Opp'n at 10-11 (internal citations omitted.)

In its February 2020 sentencing memorandum, the Government requested the Court impose the 120-month imprisonment statutory maximum in sentencing Mayzick. (See Gov't Sent'g Memo, ECF No. 145.) It advanced arguments supporting its position that the Section 3553(a) sentencing factors[7] warranted a maximum sentence in the Instant Case. (See id. at 5-10.) The Government further campaigned for a consecutive sentence to the one imposed upon, and still being served by, Mayzick in the Winslow Case, underscoring that, in the Winslow Case, Judge Hurley "specifically did not consider Mayzick's gang conduct in fashioning an appropriate sentence." (Petition Opp'n at 11 (citing Gov't Sent'g Memo at 7-10) (emphasis added).)

---

[7] See 18 U.S.C. § 3553(a) (hereafter, the "Section 3553(a) Factors").

17

In his January 2021[8] sentencing memorandum, Mayzick's counsel countered that U.S.S.G. § 5G1.3(b) mandated the Court impose a concurrent sentence; he supported Mayzick's position by relying upon the Southern District case, United States v. Leo, 706 F. Supp. 2d 544 (S.D.N.Y. 2010). (See Def. Sent'g Memo, ECF No. 149 (sealed), at 2-3.) Relatedly, counsel also advocated for the striking of Paragraph 161 from the PSR, in which Probation asserted it was in the Court's discretion whether to impose a concurrent, partially concurrent, or consecutive sentence, arguing a concurrent sentence was "mandatory". (Id. at 8.) Challenging Mayzick's contention, it its January 15, 2021 Response (see ECF No. 153), the Government asserted "neither the Guidelines nor the case law cited by Mayzick required that result"; instead, the Court was authorized to impose a consecutive sentence. (Petition Opp'n at 12.)

Addressing Mayzick's opposition and the Government's response, on February 1, 2021, Probation issued a second PSR addendum. (See ECF No. 155.) In addition to rejecting Mayzick's other objections to its PSR, Probation agreed with the Government that Mayzick's concurrent-sentence position was "flawed". (Id. at 1.) Probation further clarified:

---

[8] According to the Government: "Due to the COVID-19 pandemic, Mayzick's sentencing was adjourned until February 2021." (Petition Opp'n at 11.)

> [T]he [Winslow Case Narcotics Activities] was not considered in the guideline calculation for the instant offense, and Judge Hurley did not consider the instant gang conduct together with the drugs in fashioning the sentence for [the Narcotics Trafficking] offense. While the instant indictment charges racketeering acts pertaining to drug sales on particular dates, the defendant did not plead guilty to these acts [in the Instant Case], nor are they considered within the instant guideline calculations.

(Id.)

Mayzick's counsel quickly replied to Probation's Second PSR Addendum, charactering said addendum as "thoroughly unreliable and misleading". (See Feb. 2, 2021 Ltr., ECF No. 156.) He pressed his position that the application of U.S.S.G. § 5G1.3(b) was mandatory in the Instant Case, apparently on the his theory that, merely because Probation included Mayzick's gang-related conduct in an addendum issued in the Winslow Case, and notwithstanding Judge Hurley's explicitly rejecting consideration of such conduct, that previously rejected gang-related conduct became "relevant conduct" to the VICAR Murder Conspiracy offense in the Instant Case, thereby requiring the imposition of a concurrent sentence. (See id.)

D.    The Sentencing

Via a consented-to video hearing, on March 19, 2021, Judge Feuerstein imposed sentence upon Petitioner. (See Sent'g Minute Entry, ECF No. 159.) At the beginning of the hearing, Judge

19

Feuerstein informed the parties she had considered all the submissions made. (See Sent'g Hr'g Tr. at 3; see also id. at 10-11.) The Judge then asked the parties whether they had any further objections to the PSR or wished to add to their submissions; to both inquiries, the parties responded in the negative. (See id. at 3-4.) Continuing, the Court heard from Mayzick, who began by thanking Judge Feuerstein for her careful consideration of his case. (See id. at 4.) Mayzick further emphasized to the Court his rehabilitative efforts and his focusing upon changing his life and being a positive influence for his son. (See id. at 4-5.) Thereafter, Judge Feuerstein stated:

> I would like you to understand, Mr. Mayzick, that while I'm pleased to hear of the change in your attitude and your lifestyle, a sentence takes into account not just your future intentions but also the conduct which you were engaged in that created this to begin with.
> Sentences serve a purpose of deterrence, one hopes, not only for the person sentenced, but also for the community as a whole so that people who have the intent of doing whatever the person being sentenced was engaged in know that it is not going to be sanctioned by the court or the community.
> So I'm taking all of that into account as well as the very serious nature of the crimes with which you are charged.

(Id. at 6.) The Judge proceeded to sentence Mayzick to 120 months' imprisonment, which sentence would be consecutive to the one he was serving for the Narcotics Trafficking conviction, and which sentence was recommended by Probation. (See id.) Thereafter,

20

there was a colloquy between the Court and defense counsel clarifying the Court was rejecting Mayzick's position he should be sentenced to a concurrent sentence and was overruling Mayzick's objections to the PSR.  (See id. at 8-9.)  On March 24, 2021, Judgement entered.  (See ECF No. 160; see also Statement of Reasons, ECF No. 161 (sealed).)

E.    The Appeal

On March 25, 2021, Petitioner filed his Notice of Appeal. (See ECF No. 162.)  His defense counsel in the Instant Case continued to represent Petitioner upon appeal.  (See generally Def. Appellate Br., Ex. C, attached to Petition Opp'n.)  As the Government accurately asserts, Petitioner explicitly advanced "two claims: (1) the district court erred when it imposed a consecutive sentence; and (2) the ten-year consecutive sentence was unreasonable" and "[w]ithin those claims, [his] counsel advanced multiple arguments, including: ([3]) that the [] court was required to impose a concurrent sentence under U.S.S.G. §§ 5G1.3 and 1B1.3(a)(1); ([4]) prosecutorial misconduct; ([5]) the sentence imposed was procedurally unreasonable; ([6]) the [] court violated Federal Rule of Criminal Procedure 32 by failing to let counsel argue further against a consecutive sentence; and ([7]) the sentence imposed was substantively unreasonable." (Petition Opp'n at 14-15 (citations to Def. Appellate Br. omitted).)  And, in his appellate reply, Petitioner advanced additional claims of

21

prosecutorial misconduct, including a forum shopping claim.  (See id. (citing Def. Appellate Reply at 4-6).)

A year later, on March 15, 2022, and via a summary order, the Circuit Court affirmed Mayzick's Judgment.  See United States v. Mayzick, No. 21-0718-CR, 2022 WL 777820 (2d Cir. Mar. 15, 2022) (hereafter, the "March 2022 Decision").[9]  In doing so, the Second Circuit rejected Petitioner's counseled arguments.

More specifically, as to Mayzick's claim he was entitled to a mandatory concurrent sentence based upon Guidelines § 5G1.3(b)(2):  The Circuit Court held Mayzick could not "satisfy the key requirement" of subsection (b)(2) because the PSR--adopted in full without change by Judge Feuerstein, thereby making it her own--expressly found Mayzick's prior Winslow Case Narcotics Activities (for which he was convicted and sentenced to 162 months' imprisonment by Judge Hurley in the Winslow Case) was not "relevant conduct" to the subject VICAR Murder Conspiracy conviction.  See id. at *1.  Therefore, "the district court's finding that Mayzick's prior drug trafficking offense [in the Winslow Case] was not 'relevant conduct' is controlling and forecloses Mayzick's attempt to avail himself of Guideline § 5G1.3(b)(2)."  Id.  The Circuit Court further elucidated it was subsection (d) of Guidelines § 5G1.3 which controlled in this instance, which subsection gives

---

[9]  Also docketed in the Instant Case docket as the Second Circuit's MANDATE.  (See Instant Case, ECF No. 165.)

22

a district court the discretion to impose a sentence to run concurrently, partially concurrently, or consecutively. See id. at *2. Hence, "[b]y imposing a consecutive sentence, [Judge Feuerstein] ensured that Mayzick would be punished separately for his separate crime, a decision that was clearly withing [her] discretion under subsection (d)." Id.

As to Mayzick's claim of procedural error by Judge Feuerstein based upon her purported failure to explain her reasons for imposing a consecutive sentence since she never expressly rejected Mayzick's position that a concurrent sentence was mandatory: While acknowledging Judge Feuerstein "did not expressly reject Mayzick's [§ 5G1.3(b)] argument", "she did indicate in open court her reason for imposing a consecutive sentence when she announced her agreement with the PSR's recommendation for a consecutive sentence", which application of the Guidelines does not require lengthy explanation. Id. (quoting Rita v. United States, 551 U.S. 338, 356 (2007); see also id. (stating further "[w]e have declined to insist that the district court address every argument the defendant has made" (quoting United States v. Rosa, 957 F.3d 113, 119 (2d Cir. 2020) (internal quotation marks omitted)). Hence, that position was rejected.

As to Mayzick's substantive reasonableness claim that his sentence was disproportionate given his rehabilitative efforts and relatively low risk of recidivism: The Second Circuit rejected

this claim because Mayzick's ten-year maximum sentence was "well below what the advisory Guidelines range would have been"; therefore, it was not unreasonable.  Id.

As to Mayzick's two claims of prosecutorial misconduct: The Second Circuit found both claims unavailing.  See id. Mayzick's first misconduct claim was based upon alleged improper judge-shopping.  Under plain-error review, the Circuit Court found unpersuasive Mayzick's improper judge-shopping claim--which, in essence, was that the Government "failed to channel the case to a judge inclined to be favorable to him"--since Mayzick made "no concrete showing that such failure resulted in prejudice."  Id. (emphasis in original).  And, Mayzick's second misconduct claim was based upon a purported failure to warn by the Government, i.e., that the Government had planned to use the Winslow Case Narcotics Activities as a predicate act in the Instant Case.  The Circuit Court ruled this basis was waived since "Mayzick confined this argument in his opening brief to a single cursory paragraph and mentioned it in his reply brief only as 'background'".  Id. at *3.)  Nonetheless, it noted Judge Feuerstein "expressly found that the [G]overnment did not act in bad faith" and this "finding was not clearly erroneous."  Id. at *3 n.2.  Therefore, this "argument would fail even if it were not waived."  Id.

24

F.   The Present Matters

On March 6, 2023, Mayzick filed his Section 2255 habeas Petition, which the Government opposes.   Said Petition is fully briefed and awaiting a ruling.   A year later, on March 14, 2024, Mayzick moved for a sentence reduction pursuant to the First Step Act, which is also opposed by the Government.   That Motion, too, is now fully briefed and before the Court for its consideration. This decision rules upon all Mayzick's outstanding motions.

Defendant is currently 37-years-old and is serving his sentence at U.S. Penitentiary Coleman II, a high security federal penitentiary located in Sumterville, Florida; he has an anticipated release date of August 16, 2035.   See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Jonathan Mayzick (BOP Reg. No. 88903-053), https://www.bop.gov/inmateloc/ (last visited Mar. 27, 2026) (identifying Defendant's location as "USP II Coleman").

DISCUSSION

I.   The Petition and Related Motions

A.   Applicable Law

1.   The Section 2255 Standard Generally

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law."   Harrington v. Richter, 562 U.S. 86, 91 (2011).   To obtain relief under Section 2255, a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or

25

that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see also United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018). Therefore, a collateral attack on a conviction or sentence is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); accord Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000); Rodriguez v. United States, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), aff'd, 679 F. App'x 41 (2d Cir. Feb. 15, 2017).

When determining whether to grant relief, Second Circuit precedent "instructs that § 2255 review is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'" Hoskins, 905 F.3d at 102 (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks omitted)); see also Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) ("Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to

26

upset a conviction by collateral, as opposed to direct, attack." (internal quotation marks omitted)).  Additionally, in advancing a federal habeas corpus writ, the petitioner has the burden of proving his claims by a preponderance of the evidence.  See Negron v. United States, 520 F. Supp. 3d 296, 301 (E.D.N.Y. 2021) ("A § 2255 movant bears the burden to prove the claims in his § 2255 motion by a preponderance of the evidence." (citing Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (further citation omitted)); accord Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

### 2.    Ineffective-Assistance-of-Counsel Claims

> Claims of ineffective assistance of counsel are evaluated under the framework set forth in Strickland v. Washington, 466 U.S. 668 (1984).  "First, the [petitioner] must show that counsel's performance was deficient."  Strickland, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." Id.

Herring v. United States, No. 20-CV-9752, 2025 WL 3124678, at *4 (S.D.N.Y. Nov. 6, 2025); see also Cabral v. United States, No. 12-CR-0336, 2022 WL 307809, at *6 (E.D.N.Y. Feb. 2, 2022) (stating, "to prevail on his ineffective assistance of counsel claim, [petitioner] must '(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,'' and (2) ''affirmatively prove prejudice' arising from counsel's allegedly deficient

27

representation'" (quoting United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005); further citation omitted)). As to the first, "performance" prong, a petitioner must: (a) "show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms", with the court's review being highly deferential and indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and (b) "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Peterson, 896 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) (quoting Strickland; internal quotation marks omitted). As to the second, "prejudice" prong, a petitioner "must demonstrate that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Stickland). In that vein, a petitioner is required to show "[t]he likelihood of a different result [was] substantial, not just conceivable." Harrington, 562 U.S. at 111–12 (internal quotation marks omitted). Relatedly, the Second Circuit "requires some objective evidence other than [petitioner]'s assertions to establish prejudice." Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003). And, "[i]n assessing prejudice, courts 'must consider the totality of

28

the evidence before the judge or jury.'" Berghuis v. Thompkins, 560 U.S. 370, 389 (2010) (quoting Strickland, 466 U.S. at 695).

"Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test." Velez v. United States, No. 05-CV-0537, 2006 WL 1952191, at *4 (S.D.N.Y. July 10, 2006) (citing Strickland, 466 U.S. at 699 (instructing a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one")); see also United States v. Derounian, No. 16-CR-0412, 2024 WL 3623522, at *12 (E.D.N.Y. Aug. 1, 2024) ("A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong." (citing Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013)). Finally, "[t]he defendant bears the burden of showing deficiency and prejudice." United States v. Bush, No. 19-CR-0378, 2026 WL 263006, at *3 (E.D.N.Y. Feb. 2, 2026) (citing Weaver v. Massachusetts, 582 U.S. 286, 299 (2017)).

### 3.   Consideration of Petitioner's *Pro Se* Status

"When a defendant attacking his . . . sentence is proceeding pro se, the court must 'read [the defendant's] submissions broadly so as to determine whether they raise any colorable legal claims.'" United States v. Williams, No.

29

20-CR-0404, 2025 WL 660213, at *4 (E.D.N.Y. Feb. 28, 2025) (quoting United States v. Parisi, 529 F.3d 134, 139 (2d Cir. 2008); further citation omitted).  Hence, since Petitioner's submissions were filed pro se, the Court has liberally construed them "'to raise the strongest arguments that they suggest.'"  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  Nonetheless, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'"  Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).  Furthermore, "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [district court] must dismiss the [habeas] motion."  Seabrook v. United States, No. 22-841, 2023 WL 7489961, at *2 (2d Cir. Nov. 13, 2023) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)); see also Bush, 2026 WL 263006, at *1 n.1 (noting "the Court 'need not act as an advocate for pro se litigants'" (quoting Davis v. Kelly, 160 F.3d 917, 922 (2d Cir. 1998)).

B.   Application

1.   The Appointment Motion

Petitioner seeks appointment of counsel to assist him with his habeas Petition.  (See Appointment Motion, ECF No. 168 at ECF p.33.)   He asserts his Petition "has merit on its face and

30

would likely succeed with expert representation." (Id. at ¶2.) He also complains that, due to the COVID-19 Pandemic, access to the law library was limited, with the implication being such limited access frustrated his ability to present his Petition. (See id. at ¶4.) The Government did not respond to the Appointment Motion. (See Instant Case, Case docket, in toto.)

"There is no constitutional right to counsel in post-conviction proceedings[.]" United States v. Straza, 744 F. Supp. 3d 219, 221 (E.D.N.Y. 2024) (citing Clemente v. Lee, 72 F.4th 466, 478 (2d Cir. 2023)). Indeed, "[a]ppointment of counsel in habeas corpus cases is discretionary, and that discretion should be exercised only when the interests of justice so require, unless an evidentiary hearing is necessary." Vasquez v. McGuinness, No. 23-CV-7501, 2024 WL 2883295, at *1 (S.D.N.Y. May 22, 2024). As Honorable Lorna G. Schofield of the Southern District of New York recently succinctly explained regarding a court's discretion to appoint counsel to represent a petitioner seeking Section 2255 habeas relief:

> Section 2255(g) expressly provides that a district court "may appoint counsel," and that appointment of counsel is governed by 18 U.S.C. § 3006A. Section 3006A(a)(2) provides that representation may be provided "for any financially eligible person" when "the interests of justice so require."
> In determining whether the "interests of justice" require the appointment of counsel under Section 3006A, district courts look to Hodge v. Police Officers, 802 F.2d 58, 61-62

31

(2d Cir. 1985), a Second Circuit case articulating the factors that courts should consider in determining whether to appoint an attorney to represent an indigent civil litigant. See, e.g., Vasquez v. McGuinness, No. 23[-CV-]7501, 2024 WL 2883295, at *1 (S.D.N.Y. May 22, 2024) (applying Hodge factors when considering a motion for the appointment of counsel filed under Section 3006A); Brown v. New York, No. 22[-CV-]06371, 2024 WL 422290, at *2 (S.D.N.Y. Jan. 23, 2024) (same).

Davis v. United States, No. 25-CV-1781, 2025 WL 753541, at *1 (S.D.N.Y. Mar. 10, 2025).  Judge Schofield further elucidated: "Hodge dictates that '[i]n deciding whether to appoint counsel, . . . . the district judge should first determine whether the indigent's position seems likely to be of substance.'"  Id. (quoting Hodge); see also Vasquez, 2024 WL 2883295, at *1 (same; citing Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001), and Hodge).

Here, the Court has thoroughly reviewed Petitioner's submissions.  For the reasons that will be elucidated infra, said review demonstrates Petitioner's claims are lacking substance, and which claims the Court further finds are not legally complex.  Moreover, it is readily apparent Petitioner was well-able to put forth his claims and arguments.  Similarly, it does not appear that Petitioner was disadvantaged in presenting his claims and arguments due to limited access to a law library since they are are fleshed out and supported by citations to case law, statutes,

rules, and the Sentencing Guidelines. Moreover, because the Court has determined there is no need for an evidentiary hearing to rule upon the Petition, there is no corresponding need for counsel to assist Petitioner at such a hearing. At bottom, consideration of the Hodge factors weighs against appointing counsel since the interests of justice would not be served by such an appointment. See, e.g., Perez v. United States, No. 16-CR-0656, 2020 WL 8812829, at *1 (S.D.N.Y. June 9, 2020) (discussing Hodge factors). Hence, in its discretion, the Court denies Mayzick's Appointment Motion.

## 2. The Amendment Motion

### a. The Parties' Positions

#### i. Petitioner's Position

On July 7, 2025,[10] Petitioner moved to amend his Petition to add an addition claim of ineffective assistance of counsel. (See Amend Motion, ECF No. 182.) Though identifying the incorrect court and containing several inaccuracies, the crux of Petitioner's proffered new claim is that: "counsel was ineffective for failing to argue to the District and Appellate Courts that the consecutive 120 month sentence imposed violated the 5th Amendment's Double Jeopardy Clause, because Mayzick had already been punished for the drug conspiracy under § 846 on or about

---

[10] Although dated July 1, 2025, the Motion to Amend was received and filed by the Court on July 7, 2025. (See Amend. Motion at 1 (stamped "RECEIVED" and "FILED" July 7, 2025).)

33

2018." (Id. at 2-3, ¶¶6, 7.) He contends this claim relates back to his timely Petition. (See id. (citing Mayle v. Felix, 545 U.S. 644 (2005)).)

### ii. The Government's Position

The Government does not challenge Mayzick's amending his Petition. Instead, it proceeds to address the merits of Mayzick's new ineffective assistance claim, which it asserts is without merit. (See Amend. Opp'n, ECF No. 185, at 5, 8-9.) The Government takes the position that because Petitioner's conviction in the Instant Case was for a VICAR offense and not the RICO count charged, which RICO count included as one of the predicate acts Mayzick's Winslow Case Narcotics Activities, "Mayzick's instant crime of conviction was unrelated to his prior [N]arcotics [T]rafficking conviction" (id. at 8); hence, "Mayzick's convictions were for two clearly distinct offenses, and double jeopardy is not implicated." (Id.) In any event, Mayzick's counsel tried to have the Winslow Case Narcotics Activities stricken from the subject Indictment, but Judge Feuerstein denied that request. (See id. (citing Mayzick's Strike Motion, ECF No. 97, and the Strike Order).) According to the Government, at bottom, Petitioner cannot establish defense counsel performed at a constitutionally deficient level especially given counsel continued to press for a concurrent sentence, insisting such a sentence was mandatory, even after the Strike Motion was denied.

34

(See id. at 9.)  And, the Government further argues Petitioner is unable to show counsel's performance prejudiced Petitioner in light of the sentence imposed versus the calculated Guidelines range.  (See id.)

###### b.   The Court's Ruling

The Court turns to Rule 15 of the Federal Rules of Civil Procedure in addressing the Amendment Motion.  See generally Ching v. United States, 298 F.3d 174, 180 (2d Cir. 2002) (instructing application of Rule 15 to § 2255 habeas motions "would not frustrate the AEDPA's goals," even if motions to amend habeas motions are brought late in the proceedings, where such habeas motions have not been adjudicated to finality).

> A motion to amend a prior Section 2255 petition is governed by Federal Rule of Civil Procedure 15.  See Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001).  Leave to amend "shall be freely given when justice so requires," but it may be properly denied where, among other things, there is "undue prejudice to the opposing party by virtue of allowance of the amendment[.]"  Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).
> Pursuant to Federal Rule of Civil Procedure 15(c)(1)(B), pleadings may be amended when the amended pleading relates back to the original pleading—that is, if it "ar[i]se[s] out of the conduct, transaction, or occurrence set out . . . in the original pleading[.]"  Fed. R. Civ. P. 15(c)(1)(B). . . .  In the habeas context, "[s]o long as the original and amended petitions state claims that are tied to a common core of

35

operative facts, relation back will be in order." Mayle, 545 U.S. at 664.

Lee v. United States, No. 07-CR-0003, 2024 WL 3520274, at *4 (S.D.N.Y. July 24, 2024). And, as the Lee Court further states: "In the context of pro se habeas petitions, courts have construed motions for leave to amend as substantive motions." Id. at *5. Therefore, "where the claims raised in a motion to amend have been fully briefed by the parties, courts have . . . construed the underlying habeas petition as amended." Id. (citing Cordova-Diaz v. Brown, No. 10-CV-5133, 2011 WL 4060086, at *3 (S.D.N.Y. Sept. 14, 2011) (granting motion to amend where respondent addressed the merits of petitioner's claim in an opposition and petitioner replied)).

In this instance, the Court grants Petitioner's Amendment Motion for several reasons. First, Rule 15-based requests to amend are to be "freely given . . . when justice so requires." FED. R. CIV. P. 15(a)(2). Second, there is no dispute the proffered amended claim of ineffective assistance of counsel relates back to the pending Petition, arising out of the conduct set out in Mayzick's Petition. See FED. R. CIV. P. 15(c)(1)(B); Mayle, 545 U.S. at 664. Third, the Government did not object to Petitioner's amendment request, but proceeded to address the substance of Petitioner's proffered amended claim, fully briefing its opposition to the amended claim. (See Amend. Opp'n, in toto.)

36

Relatedly, Petitioner filed a Reply to the Amendment Opposition. Accordingly, the Amendment Motion is GRANTED, with the Court finding the Petition is adequately amended by virtue of the briefing of said Motion; therefore, Petitioner's proffered new ineffective-assistance claim is incorporated into the Petition. See, e.g., Lee, 2024 WL 3520274, at *6.

### 3. The Petition

#### a. The Parties' Positions

##### i. Petitioner's Position

Excluding the additional claim brought via his Amendment Motion (discussed supra), Petition advances four grounds he contends warrants habeas relief, with two claims asserting ineffective assistance of counsel and two claims contending the Court abused its discretion. (See generally Petition; see also Petition Support Memo, ECF No. 168 at ECF pp. 15-31.[11])

In Ground One, Petitioner argues his defense counsel was ineffective for not raising arguments at sentencing based upon U.S.S.G. §§ 5G1.3(b) and 1B1.3. Petitioner also asserts his attorney "completely ignored Mr. Mayzick's request to challenge his Career Criminal status," maintaining "Conspiracy to Murder under §1959(A)(5) is not a crime of violence for the purpose of enhancement." Petitioner baldly contends, if his counsel had "made

---

[11] Hereafter, the Court will cite to the internal page numbers of the Petition Support Memo.

this argument, the outcome would have certainly been different." (Petition at 5.) In Ground Two, in essence, Petitioner reiterates his first claim of ineffective assistance, i.e., if counsel had "made the argument for a concurrent sentence that the court would have sentenced him to a concurrent sentence rather than a consecutive sentence." (Id. at 6.) According to Petitioner, this alleged "error created a miscarriage of justice." (Id.)

In Ground Three, Petitioner presents his claim that Judge Feuerstein abused her discretion by not allowing defense counsel "to make an argument for [a] concurrent sentence under [] U.S.S.G. §5G1.3(b)(2) and under U.S.S.G. §1B1.3." (Id. at 8; see also, e.g., Petition Support Memo at 13.) In Ground Four, Petitioner attempts to expand upon his abuse-of-discretion claim, stating without any supporting factual description, the "District Court had a duty to safeguard" Petitioner's "due process rights". (Id. at 9.) The insinuation appears to be that the District Court somehow violated this duty.

Finally, while not identified in his Petition, in his Support Memo, Petitioner identified a "Ground Five" for requesting habeas relief, to wit, "Prosecutorial Misconduct". (See Petition Support Memo at 16-17.) This fifth basis is premised upon the Government's Revised Sentencing Proposal made in the Winslow Case. (See id.) Petitioner also claims his "counsel was ineffective for not raising Prosecutorial Misconduct on appeal" and, "[h]ad he

38

done so, the outcome would have certainly been different."  (Id. at 17.)

### ii.  The Government's Position

The Government construes the Petition to raise seven claims:

> (1) the district court abused its discretion and violated due process by failing to allow Mayzick's counsel to argue against a consecutive sentence [hereafter, "Claim (1)"]; (2) the district court's imposition was a consecutive sentence was improper [hereafter, "Claim (2)"]; (3) the sentence imposed by the district court was unreasonable [hereafter, "Claim (3)"]; (4) the government committed prosecutorial misconduct [hereafter, "Claim (4)"; (5) counsel was ineffective for failing to argue against a consecutive sentence [hereafter, "Claim (5)"]; (6) counsel was ineffective for not arguing that Mayzick's conviction [pursuant to §] 1959(a)(5) was not a crime of violence for the purposes of the [Guidelines] [hereafter, "Claim (6)"]; and (7) counsel was ineffective by failing to argue prosecutorial misconduct on direct appeal [hereafter, "Claim (7)"; collectively the "Claims"].

(Petition Opp'n at 16 (internal citations omitted).)

Of these seven identified Claims pursuant to which the Government contends Petitioner seeks Section 2255 habeas relief, as to Claims (1) through (4) (hereafter, the "Non-Ineffective Claims"), the Government argues both that each was raised before the Circuit Court on direct appeal and each was rejected by that Court.  (Id. at 22.)  "Accordingly, the [P]etitioner is precluded and barred from raising these [C]laims in a collateral attack, as

39

the mandate rule prevents re-litigation in the district court . . . of matters expressly decided by the appellate court." (Id. at 22-23 (citing United States v. Ben Zvi, 242 F.3d 89, 95 (2d Cir. 2001)); see also id. at 17-19 (discussing applicable law regarding procedurally barred claims).)

Continuing, regarding Petitioner's ineffective-assistance claims, i.e., Claims (5) through (7) (hereafter, the "Ineffectie Claims"[12]), as to Claims "(5)" and "(7)" enumerated above, they are unavailing since counsel did advance the very arguments identified in claims "(5)" and "(7)" to both the District and Circuit Courts. (See id. at 24-25.) Therefore, Petitioner's claim that his counsel's performance was deficient or Petitioner was prejudiced due to the alleged non-presentation of those arguments is without merit. (See id.) And, as to Claim (6), the Government similarly argues that Claim is meritless; it is premised upon counsel's alleged failure to argue to either the District or Circuit Court, "that conspiracy to commit murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5), was not a crime of violence for the purposes of the career offender [G]uideline (§4B1.1)." (Id. at 25.) But,

---

[12] For clarity, the Court notes it is including within its definition of Petitioner's "Ineffective Claims" Petitioner's amended ineffective claim (raised via his Amendment Motion), which for consistency with identifying the Defendant's claims, the Court refers to hereafter as "Claim (8)". Hence, the Ineffective Claims consists of four claims, i.e., Claim (5) through Claim (8).

according to the Government, counsel's electing "not to advance an argument without clear legal support, in an unsettled area of law, can hardly be said to be deficient performance". (Id. at 26.) Nor, in this instance, would Petitioner be able to establish prejudice due to this supposed failure since, even if Petitioner was not determined to be a career offender, the resulting non-career offender Guidelines range to which he would have been exposed would have still been "triple the statutory maximum of ten years' imprisonment, the term imposed by Judge Feuerstein." (Id.)

b. The Court's Ruling

As a threshold matter, the Court has determined a hearing on the Petition is not required in this instance. "To justify a hearing, the petition must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle the petitioner to relief." United States v. Brickhouse, No. 09-CR-1118, 2017 WL 1049509, at *4 (S.D.N.Y. Mar. 16, 2017) (citing Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013)). On the record presented, Petitioner has not made out a prima facie case that he is entitled to habeas relief. See generally Puglisi v. United States, 586 F.3d 209 (2d Cir. 2009); see also 28 U.S.C. § 2255(b); Ulbricht v. United States, No. 14-CR-0068, 2022 WL 2116685, at *5 (S.D.N.Y. June 13, 2022) (recognizing "a decision without a testimonial hearing is proper where [among other situations,] the

41

allegations of the motion, accepted as true, would not entitle the petitioner to relief") (citation modified); Brickhouse, 2017 WL 1049509, at *4 (stating "a hearing is not required where the petitioner's allegations are 'vague, conclusory, or palpably incredible'" (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).   Nor does Mayzick support any of his grounds for habeas relief with an affidavit.   (See Petition, in toto); see also Puglisi, 586 F.3d at 215-17.   Similarly, Petitioner fails to support his ineffective-assistance claims with any other objective evidence.   (See id.); Puglisi, 586 F.3d at 216.   Given this, "as set forth above, the parties' written submissions and the record in this case are more than sufficient and uncontroverted to resolve the conclusory factual issues raised by Petitioner without a hearing and fully supports a denial of the Petition." Sinclair v. United States, No. 2026 WL 607856, at *11 (S.D.N.Y., 2026) (collecting cases denying hearings on Section 2255 petitions). Cf. Puglisi, 586 F.3d at 213; see also Seabrook, 2023 WL 7489961, at *2 (affirming dismissal of habeas petition without hearing where petition was without merit).   Accordingly, given its review of the Petition and the record, this Court declines to hold an evidentiary hearing and proceeds to rule upon the parties' submissions.

Continuing, Petitioner brings two categories of claims: claims based upon ineffective-assistance-of-counsel (i.e., the "Ineffective Claims") and claims that are not so based (i.e., the

42

"Non-Ineffective Claims").  The Court proceeds by first addressing the Non-Ineffective Claims, followed by the Ineffective Claims.

### i.    The Non-Ineffective Claims

The Second Circuit instructs:

> Waivers of the right to appeal a sentence are presumptively enforceable.  United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir.2000).  "Knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants."  United States v. Granik, 386 F.3d 404, 412 (2d Cir.2004) (internal quotation marks omitted).  As a result, we find waivers unenforceable only in very limited situations, "such as when the waiver was not made knowingly, voluntarily, and competently[;] when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases[;] when the government breached the plea agreement[;] or when the sentencing court failed to enunciate any rationale for the defendant's sentence." Gomez-Perez, 215 F.3d at 319 (internal citations omitted).

United States v. Arevalo, 628 F.3d 93, 98 (2d Cir. 2010); United States v. Kimmons, No. 19-4374-CR, 2022 WL 2344088, at *1 (2d Cir. June 29, 2022) (summary order) (relying upon Arevalo, dismissing appeal based upon defendant's waiver of right to appeal contained in his plea agreement).

Here, Petitioner's conviction in the Instant Case resulted from his entering a guilty plea pursuant to the Second Plea Agreement.  (See supra at 14; see also Second Plea Agmt.)

43

Prior to entering his change of plea, the Court ensured Petitioner was aware of the rights he would be waiving, as agreed to in the Second Plea Agreement.  (See generally Plea Hr'g Tr.; see also id. at 9:11-13.)  Of relevance here, Petitioner agreed he would be waiving his right to appeal or otherwise challenge his sentence if he were sentenced to 120 months or less of imprisonment, which waiver provision was highlighted to Petitioner and the Court during Petitioner's change-of-plea hearing.  (See Second Plea Agmt., ¶4 (stating, inter alia, Petitioner agreed not to "otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 120 months or below"); see also Plea Hr'g Tr. at 9:17-10:12, 15:25-16:5.)  The Court confirmed with Petitioner he had reviewed the Second Plea Agreement with his attorney (see Plea Hr'g Tr. at 9); and, in signing said Agreement, Petitioner stated:  "I have read the entire agreement and discussed it with my attorney.  I understand all of its terms and am entering into it knowingly and voluntarily."  (Second Plea Agmt., at 7 (also including defense counsel's signature approving said Agreement).)

After conducting a thorough Rule 11(b) allocution, the Court accepted Petitioner's guilty plea, which was found to be knowing and voluntary.  (See id. at 18, 25; see also Mar. 13, 2019 Order (adopting Magistrate Judge's recommendation that Mayzick's "plea was knowingly and voluntarily entered" into "with a full

44

understanding of his rights ant the consequences of the plea [for] which there [wa]s a factual basis" and accepting Mayzick's guilty plea).) Because Judge Feuerstein imposed a sentence of 120 months' imprisonment, the appeal waiver was triggered.

Given the clear terms of the Second Plea Agreement, to which Petitioner agreed and which his counsel approved, and what transpired at Petitioner's Plea Hearing, any assertion the appeal waiver provision was not agreed to knowingly and voluntarily is patently unavailing. See, e.g., LaMarco v. United States, 336 F. Supp. 3d 152, 165 (E.D.N.Y. 2018) (relying upon, inter alia, defendant's sworn statements during guilty plea allocution in analyzing the validity of his appeal waiver, which statement carries a strong presumption of accuracy) (further citations omitted). Further, Petitioner has not challenged the validity of his appeal waiver on any of the other prescribed grounds identified by the Second Circuit for finding an appeals waiver to be unenforceable. See Kimmons, 2022 WL 2344088, at *1 (quoting Arevalo, 628 F.3d at 98). "[H]is appellate waiver is thus enforceable, barring the instant [Non-Ineffective C]laim[s]." Id.

Alternatively, even if the Non-Ineffective Claims were not barred by Petitioner's appeal waiver, as the Government argues, said Claims would be barred from consideration in accordance with the mandate rule. (See Petition Opp'n at 22-23.) "The mandate rule bars re-litigation of matters expressly decided by the

45

appellate court . . . and issues impliedly resolved by the appellate court's mandate." Linick v. United States, No. 13-CR-0120, 2022 WL 17065998, at *3 (E.D.N.Y. Nov. 16, 2022) (quoting Rodriguez v. United States, 767 F. App'x 160, 164 (2d Cir. 2019)) (citation modified); see also Yick Man Mui, 614 F.3d at 53 ("The mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate." (citation omitted)).

The Court agrees with the Government that the Second Circuit's March 2022 Decision addressed and rejected Petitioner's Non-Ineffective Claims either directly or implicitly. (See Petition Opp'n at 22-23; see also supra, BACKGROUND, Section II(E) (discussing extensively March 2022 Decision).) As to Claim (1): It is abundantly clear from the context of its decision, that in addressing his Guideline § 5G1.3(b) argument, the Circuit Court considered and rejected Mayzick's further assertion that Judge Feuerstein violated his due process by not allowing his defense counsel to argue against a consecutive sentence. See March 2022 Decision, 2022 WL 777820, at *2 (stating the Circuit Court has "declined to insist that the district court address every argument that defendant has made" (quoting Rosa, 957 F.3d at 119); see also id. at *3 (stating further that the panel had "considered Mayzick's remaining arguments and f[ound] them to be meritless"); (cf.

46

Mayzick's Appellate Brief at 16-17 (arguing defense counsel was not permitted to advocate on behalf of Mayzick)).  In any event, said argument is belied by the record because: defense counsel raised his due process argument in his sentencing memo submitted to the District Court (see Def. Sent'g Memo, ECF No. 158, at 1-5); Judge Feuerstein stated she had considered counsel's submissions (see Sent'g Hr'g Tr. at 8:18-20, 10:14-11:5); and, notwithstanding his claim to the contrary, Judge Feuerstein did permit defense counsel to address the Court regarding his underlying Guideline § 5G1.3(b) argument, even if it was to clarify counsel's understanding of Judge Feuerstein's ruling regarding same (see id. at 8:8-9:8).  As this Court has previously stated, under such a scenario, "there was no need to reiterate arguments [already] raised".  Leonardi v. United States, No. 21-CR-0452, 2026 WL 457085, at *13 (E.D.N.Y. Feb. 18, 2026); see also United States v. Rodriguez, 697 F. App'x 734, 738 (2d Cir. June 21, 2017) (stating a court "need not utter robotic incantations repeating each factor that motivates a sentence" where, among other things, the district court stated it had considered the parties' sentencing submissions (citation modified)).  Hence, the Court will not consider Claim (1) as a basis to grant habeas relief.

As to Claim (2):  The Circuit Court expressly rejected Mayzick's argument that imposition of a consecutive sentence was improper.  It stated:  "By imposing a consecutive sentence, the

district court ensured that Mayzick would be punished separately for his separate crime, <u>a decision that was clearly within its discretion</u> under subsection (d)" of Guideline § 5G1.3, the governing subsection. <u>March 2022 Decision</u>, 2022 WL 777820, at *2. Thus, given Claim (2) has already been fully litigated and ruled upon by the Circuit Court, pursuant to the mandate rule, Mayzick will not now be heard to rely upon Claim (2) in support of his habeas Petition.

As to Claim (3): Recognizing his sentence was "well below what the advisory Guidelines range would have been absent the statute's ten-year maximum sentence", the Circuit Court concluded the sentence Judge Feuerstein imposed upon Mayzick was not substantively unreasonable. <u>March 2022 Decision</u>, 2022 WL 777820, at *2. Therefore, it is clear that Claim (3), too, has been previously litigated and ruled upon, thereby precluding its re-litigation here. Accordingly, Mayzick's reliance upon Claim (3) in advancing his habeas Petition is unavailing.

As to Claim (4): The mandate rule further impedes the Court's consideration of Claim (4) as a ground for granting habeas relief since the Second Circuit soundly rejected both arguments advanced by Mayzick on the basis of prosecutorial misconduct. <u>See March 2022 Decision</u>, 2022 WL 777820, at *2-3 ("Mayzick gestures at two additional arguments based on prosecutorial misconduct. Neither is availing."); <u>see also id.</u> at n.2. Since the Circuit

Court resolved these claims upon appeal, this Court is precluded from considering Claim (4) anew in support of Mayzick's Petition.

In sum, Mayzick's reliance upon the Non-Ineffective Claims in support of his Petition is unavailing, and the Petition is DENIED based upon those Claims.  See, e.g., United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) ("It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." (internal quotation marks and citations omitted)).

                    ii.    The Ineffective Claims

In the context of sentencing, like here, to establish prejudice "the petitioner must demonstrate a reasonable probability that, but for counsel's deficiencies with respect to the sentencing matters, the petitioner would have received a lesser term of imprisonment."  Whaley v. United States, No. 09-CR-0619, 2024 WL 2847141, at *7 (E.D.N.Y. June 5, 2024) (citing Glover v. United States, 531 U.S. 198, 203 (2001)).  However, for Claims (5) through (8) of the Ineffective Claims, Mayzick is unable to satisfy the requisite prejudice prong because he has not shown "there [wa]s a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different", i.e., he would have received a lesser sentence.  Strickland, 466 U.S. at 694.  As persuasively argued by the Government, even assuming Mayzick had not been categorized as a career offender,

49

"and instead fell within criminal history category V," given Mayzick's "42" total offense level, his "Guidelines range of imprisonment would have been unchanged" at 360-months-to-life imprisonment, which range is triple the statutory ten-year maximum sentenced imposed by Judge Feuerstein.  (Petition Opp'n at 26.) Given this factual scenario, Petitioner cannot show a reasonable probability that he would have received a lesser sentence but for defense counsel's alleged professional errors.

> Moreover:
>
> other than his bald assertions, Petitioner has failed to proffer any objective evidence demonstrating prejudice.  See Norville [v. United States], 151 F. Supp. 3d [329,] 336 [(S.D.N.Y. 2015)] (addressing prejudice prong of the Strickland test; instructing a petitioner must affirmatively prove prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" and "some objective evidence other than [petitioner's] assertions is required to establish prejudice" (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir.2003)) (citation modified).  In the absence of establishing prejudice, Petitioner's claim of ineffective-assistance-of-counsel [] fail[s].

Hardy v. United States, No. 17-CR-0372, 2026 WL 252003, at *9 (E.D.N.Y. Jan. 30, 2026); (see Petition Support Memo at 14 (baldly stating "[h]ad the performance of counsel been effective, the outcome of Defendant's sentence would have certainly been different"); see also id. at 16 (same); Amend. Reply, ECF No. 188, at ECF p.8).  "'[P]urely speculative' arguments about the impact

50

of an error do not establish prejudice." DeCarlo v. United States, No. 08-CR-0523, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (quoting United States v. Weiss, 930 F.2d 185, 199 (2d Cir. 1991)).

To the extent Petitioner relies upon an email exchange between himself and his defense counsel and a subsequent pro se letter to Judge Feuerstein (in which Petitioner complained his counsel would not advance Petitioner's argument regarding crimes of violence) as support for Ineffective Claim (6) (see Petition Support Exhibits, ECF No. 170), those exhibits fail to demonstrate prejudice. They do not establish a reasonable probability that, but for defense counsel's performance, Mayzick's sentence would have been lower; rather, they illustrate Mayzick's misunderstanding regarding the interplay between a predicate crime of violence and sentencing on a § 924(c) firearm conviction, for which Mayzick was not convicted. (See, e.g., Petition Opp'n at 25 n.8 (explaining all the cases cited by Petitioner in his letter to Judge Feuerstein "deal with conspiracy to commit murder in-aid-of racketeering and other conspiracy offenses as the basis of [§] 924(c) convictions, not as the basis for a career offender adjudication").) They also help explain defense counsel's refusal to advance this argument at Petitioner's behest.

Continuing, because Petitioner is also unable to establish the performance prong of the Strickland test as to each of the Ineffective Claims he advances for habeas relief, his

51

Petition would be denied on that basis, as well.  As to Claims (5) & (7):  Petitioner faults his defense counsel for not arguing to the District Court for a concurrent sentence under U.S.S.G. §§ 5B1.3 and 1B1.3 and not arguing prosecutorial misconduct to the Appellate Court.  But, no such fault lies since, as the record clearly establishes, defense counsel made those very arguments to the respective Courts.  Therefore, the Court agrees with the Government that "counsel's performance on these issues could not have been deficient, as he raised the very claims that the [P]etitioner claims he should have raised."  (Petition Opp'n at 24.)

As to Claim (6):  As the Government astutely explains:

This claim is based upon the fact that counsel did not argue at sentencing or on appeal, as the [P]etitioner had urged counsel to do, that conspiracy to commit murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5), was not a crime of violence for the purposes of the career offender guideline (§4B1.1).

(Petition Opp'n at 25 (footnotes omitted).)  Rather, as the Government noted, defense counsel challenged Petitioner's career offender status "under a different theory, related to the Petitioner's prior convictions for violent assaults."  (Id. at note 9.)  The crux of the Government's argument is that because "the jurisprudence around crimes of violence is [a] frequently changing landscape," defense counsel's choice "not to advance an

52

argument without clear legal support, in an unsettled area of law, can hardly be said to be deficient performance." (Id. at 25, 26.) The Court agrees; given the strong presumption afforded defense counsel that his conduct falls within the wide range of reasonable professional assistance, counsel's refusal to advance arguments without a reasonable chance of success will not be deemed ineffective. See, e.g., Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) ("The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled." (quoting Jameson v. Coughlin, 22 F.3d 427, 429-30 (2d Cir. 1994)).

Moreover, the Government argues: "[F]rom the face of the Guidelines and the relevant application notes, it appears that conspiracy to commit murder in-aid-of racketeering still qualifies as a crime of violence for purposes of the career offender Guideline." (Petition Opp'n at 25 (emphasis added).) That is so.

> In fact, the November 1, 2023 Amendments responded to a circuit conflict concerning the authoritative weight of the former Application Notes to § 4B1.2 by explicitly confirming that the definition of "crime of violence" under the Guidelines includes certain inchoate crimes. Supplement to Appendix C at 246-47; U.S.S.G. § 4B1.2(a). The Commission did so by transferring the exact language from the Application Notes to the text of the Guidelines, thereby mooting the circuit split. Id. Thus, a crime of violence as used to define a career offender under § 4B1.1 includes "any offense under federal or state law, punishable by imprisonment for a term

53

> exceeding one year, that . . . has an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a).  Further, by inserting a new subsection entitled "Inchoate Offenses Included," the Amendments make clear that the Guidelines' definition of crime of violence includes "aiding and abetting, attempting to commit, or conspiring to commit" violent offenses.  § 4B1.2(d); see also Supplement to Appendix C at 245.

United States v. Andrews, 705 F. Supp. 3d 142, 153 (S.D.N.Y. 2023) (emphases added).   Given this revised definition, defense counsel's refusal to advance Petitioner's crime-of-violence argument was sound and clearly not ineffective assistance.

As to Claim (8):  Petitioner's Double Jeopardy-based Claim (8) is premised upon a fallacy.  A thorough review of the record confirms, as stated by the Government:

> Mayzick mistakenly conflates [Count 1,] the RICO charge upon which that he was indicted (18 U.S.C. § 1962(c)) and [Count 3,] the VICAR offense (18 U.S.C. § 1959(a)(5)) to which he pled guilty.  Because he did not plead to the RICO count which had included his [Winslow Case] prior narcotics conviction as a predicate and instead pled guilty to conspiracy to murder [] rival gang members, Mayzick's instant crime of conviction was unrelated to his prior narcotics trafficking conviction [in the Winslow Case]. Accordingly, Mayzick's convictions were for two clearly distinct offenses, and double jeopardy is not implicated.

(Amendment Opp'n at 8.)  True; therefore, Petitioner's Double Jeopardy contention is without merit.  Hence, it is of no moment that "the factual basis of the VICAR plea expressly incorporated

54

the racketeering enterprise paragraphs (paras. 1-7) that include[d] the drug-trafficking conduct that was the subject of Petitioner's prior narcotics conviction" as argued by Mayzick in support of his Double Jeopardy position. (Amend. Reply at 2; see also id. at 4.) A fair reading of Count 3 of the Superseding Indictment shows preceding paragraphs (1) through (7) where, indeed, incorporated by reference into Court 3; however, such a reading also evinces those paragraphs described generally the underlying racketeering enterprise to which Petitioner admitted he belonged and did not specifically reference the Winslow Case Trafficking Activities. (See Superseding Indictment.) Hence, no assault to Double Jeopardy has been presented. And, in any event, Double Jeopardy does not bar prosecutors from using past convictions as predicate acts in a RICO charge.[13] See, e.g., Garrett v. United States, 471 U.S. 773, 785 (1985); United States v. Persico, 823 F.2d 705, 710 (2d Cir. 1987). Accordingly, defense counsel was not ineffective for failing to raise Petitioner's Double Jeopardy argument, in the first instance, to the District Court at sentencing or, in the second instance, upon appeal to the

---

[13] And, as a basis for challenging the effectiveness of his counsel's assistance, Petitioner's Double Jeopardy argument carries a disingenuous tone especially since Petitioner knew when he pled guilty to the VICAR Murder Conspiracy charge that the Government could use the Winslow Case Trafficking Activities as a predicate act; indeed, he agreed to that use. (See First Plea Agmt. at ¶5.a, and at 9.)

Circuit Court.  See, e.g., Parks v. Sheahan, 104 F. Supp. 3d 271, 285 (E.D.N.Y. 2015) ("The failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance." (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)); see also id. at 288 (discussing, even when there are several meritorious claims, "the choice of which issues to raise on appeal is a matter of professional judgment left to appellate counsel" (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)).

–*–*–*–

To the extent not explicitly stated herein, the Court has considered Petitioner's remaining arguments in support of his Petition and finds them to be without merit.  At bottom, given the record of this case, and having considered the relevant case law, the Court finds Petitioner is precluded from advancing his arguments by the enforceable appeal waiver in his Plea Agreement, as well as application of the mandate rule, and is otherwise unable to satisfy the applicable Stickland test.  In sum, habeas relief is not warranted.

## II.  The Compassionate Release Motion

### A.  Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614

56

(S.D.N.Y. 2020)).  The FSA is such a statute, which Act modified

18 U.S.C. § 3582(c).   As recently and succinctly stated by

Honorable Carol Bagley Amon of this District:

> Under section 3582(c)(1)(A), once a
> defendant has exhausted his administrative
> remedies . . . , a district court may reduce
> a sentence, "after considering the factors set
> forth in section 3553(a) to the extent they
> are applicable," when "extraordinary and
> compelling reasons warrant a reduction."  18
> U.S.C. § 3582(c)(1)(A).
> Congress has delegated to the Sentencing
> Commission the power to define the
> circumstances in which "extraordinary and
> compelling reasons" exist.  The Guidelines
> list six categories of such circumstances.

United States v. Palacios, No. 97-CR-0646, 2025 WL 1446131, at *2

(E.D.N.Y. May 20, 2025); see also U.S.S.G. § 1B1.13(b); United

States v. Donato, No. 95-CR-0223, 2024 WL 1513646, *5 n.10

(E.D.N.Y. Apr. 18, 2024) ("[T]he amended guidance from the

[Sentencing] Commission as to what constitutes extraordinary and

compelling reasons now controls the analysis of a compassionate

release petition, however initiated." (citing U.S. Sent'g Comm'n,

Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254

(effective Nov. 1, 2023), and United States v. Lopez, No.

16-CR-0317, 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024))).

However, "[r]ehabilitation alone shall not be considered an

extraordinary and compelling reason."  28 U.S.C. § 994(t); see

also U.S.S.G. § 1B1.13(d); United States v. Brooker, 976 F.3d 228,

235-37 (2d Cir. 2020).

"A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a compassionate release motion]." United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)). And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing Keitt, 21 F.4th at 72–73); see also, e.g., United States v. Pimentel, No. 23-7096-CR, 2025 WL 783730, *2-3 (2d Cir. Mar. 12, 2025) (summary order) (affirming district court's denial of compassionate release where lower court's denial was based solely upon consideration of the Section 3553(a) Factors and without consideration of proffered extraordinary and compelling reasons).

"The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson,

58

No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).
Further, "[a] district court's discretion in deciding a compassionate release motion—as in all sentencing matters—is broad." Rodriguez, 147 F.4th at 222 (quoting Brooker, 976 F.3d at 237) (citation modified).

B.   Application

1.   The Parties' Positions

a.   Defendant's Position

Defendant claims several extraordinary and compelling reasons warranting a reduction in his sentence, to wit: (i) he has renounced his Gang affiliations (see Motion at 5); (ii) he is subject to an unusually long sentence (see id. at 6-7); and (iii) family circumstances, highlighting his mother's present health and her admission to a long-term nursing facility (see id. at 6; see also Motion Addendum (hereafter, "Addendum"), ECF No. 175-1, at 1-3).   As for the Section 3553(a) Sentencing Factors, "Mayzick respectfully defers judgment to the Court in the proper weighing" of said Factors, arguing he "is a changed man and that based on his circumstances, further incarceration would not rationally serve the objectives" of the Factors.   (Motion at 9; see also Addendum at 3 (asserting Defendant "is a transformed person").)   Relatedly, relying upon his Gang repudiation and familial responsibilities, Defendant also maintains "he is no longer dangerous to any other person or to the community."   (Id.)

59

Defendant supports his Motion with, inter alia:  his Addendum, which the Court deems to be a personal statement;[14] evidence of completion of numerous courses and programs (see Inmate Educ. Data, Attach. 1, attached to Addendum);[15] documents relating to the administration of his late father's estate (see Attachs. 8 & 9); various letters of support (see, e.g., Son's Letter, Ex. 10-A; Felder Letter, Ex. 10-B (son's mother); Glynn Letter, Ex. 10-A (fellow inmate); Mayzick Letter, Ex. 10-B, all letters attached to Addendum); and a memorandum regarding the dropping of Defendant's Gang affiliation (see BOP Nat'l Gang Unit Memo, Attach. C, ECF No. 181 at ECF pp.18-19, attached to Reply).  He has also included a Proposed Release Plan.  (See ECF No. 175-5.)

### b.    The Government's Position

Unsurprisingly, the Government opposes Defendant's Motion.  (See generally Opp'n.)  It contends none of Defendant's claimed extraordinary and compelling reasons have merit.  (See id. at 3.)  In rebutting Defendant's Gang renouncement argument, in addition to claiming it has no proof of Defendant's "debriefing", the Government asserts the case upon which Defendant relies in support of this argument, United States v. Glynn, No. 06-CR-0580, 2022 WL 562652 (S.D.N.Y. Feb. 2, 2022), where the court found a

---

[14]  The Addendum was not made under penalty of perjury or otherwise sworn to.

[15]   All "Attachments" cited were submitted with Defendant's Addendum (ECF No. 175-1).

combination of reasons warranted a modest reduction in the defendant's sentence, "is clearly inapposite" to the Instant Case. (Id. at 4.) Here, there are no such combined reasons supporting the requested reduction. (See id.) Addressing Defendant's unusually-long-sentence argument, the Government would have the Court reject it since, when viewed in tandem, the 162-month sentence imposed in the Winslow Case together with the 120-month sentence imposed in the Instant Case produces an aggregate 282-sentence, which falls squarely within the 235-to-293-months Guidelines range applicable to Defendant's first, Winslow Case conviction; thus, there is no basis to claim the sentence in the Instant Case is unusually long. (See id. at 5.) Finally, in rejecting Defendant's claim regarding the care of his mother, the Government underscores "other arrangements have already been enacted to provide for [the mother's] circumstances", thereby deflating Defendant's reliance upon same as an extraordinary and compelling reason to reduce his sentence. (See id. at 5-6.) And, as to the Section 3553(a) Sentencing Factors, the Government contends any reduction to Defendant's sentence "would undermine the seriousness of [his] conduct, not provide general or specific deterrence and not provide just punishment," highlighting the sentences Defendant received in both the Winslow and Instant Cases "were below the advisory Guidelines recommended" and Defendant "already benefitted from his apparent attempts at rehabilitation"

61

from Judge Hurley in the Winslow Case.   (Id. at 6.)   For the reasons that follow, the Court agrees.

  2.   The Court's Ruling[16]

  a.   Exhaustion

Defendant asserts he requested compassionate release from the warden on November 29, 2023 and the warden denied that request on December 4, 2023.  (See ECF No. 175-2 at ECF p.4.)  The Government does not contest Defendant's exhaustion representation. (See Motion Opp'n at 3.)  Hence, it "will not object to the jurisdiction of the Court to resolve the [M]otion on the merits." (Id.)  Therefore, upon this record, the Court deems Defendant has

---

[16]  In addition to seeking a sentence reduction, Defendant also requests appointment of counsel (hereafter, the "Appointment Request").  (See ECF No. 175-2, at § V.)  In its discretion, the Court denies Defendant's Appointment Request.  See United States v. Acosta-Martinez, Nos. 12-CR-0063 & 15-CR-0087, 2023 WL 3628589, at *1 n.1 (E.D.N.Y. May 24, 2023) (noting appointing counsel to assist a defendant with a compassionate release motion is within the court's discretion).  "[A] defendant has no right to the assistance of counsel in filing a motion for compassionate release . . . ."  United States v. Fleming, 5 F.4th 189, 193 (2d Cir. 2021); see also United States v. Romano, 707 F. Supp. 3d 233, 234 n.1 (E.D.N.Y. 2023) (in court's discretion, denying defendant's request to appoint counsel to assist in pursuing motion for compassionate release). The "issues presented in [Mayzick's] motion for compassionate release are not legally complex . . . ." Id.  Moreover, Defendant's submissions show he is well-able to present his arguments in support of his Motion, which is fully briefed, and he does not require assistance in advancing said Motion.  See, e.g., United States v. Yong, No. 95-CR-0825, 2024 WL 3648259, *5 (E.D.N.Y. Aug. 5, 2024) (denying appointment of counsel where defendant's submissions exhibited he was "well-able to present his arguments in support of his" compassionate release motion).

62

satisfied the exhaustion requirement and proceeds to the merits of his Motion.  See generally United States v. Diaz, No. 10-CR-0277, 2024 WL 3228347, at *2 (E.D.N.Y. June 27, 2024) (finding, where Government "direct[ed] its opposition entirely at whether [defendant] states extraordinary and compelling reasons and whether § 3553(a) factors militate against his early release," court was free to consider merits of defendant's compassionate release motion (omitting internal quotations marks and citations)).

### b.   Extraordinary and Compelling Circumstances

In accordance with Policy Statement 1B1.13, the Court considers Defendant's claims of extraordinary and compelling circumstances warranting a sentence reduction.  For the reasons articulated below, it finds Defendant's proffered circumstances unavailing.

### i.   Purported Gang Renunciation[17]

The Court construes Defendant's gang-renunciation argument as one advancing his rehabilitation.  (See Motion at 5); see also United States v. Byam, No. 12-CR-0586, 2024 WL 1556741, at *7 (E.D.N.Y. Apr. 10, 2024) ("What constitutes 'rehabilitation' is left to th[e] Court's broad discretion to determine.").  Other

---

[17]   To the extent Defendant asks the Court to consider his gang-renunciation argument in the context of the Section 3553(a) Sentencing Factors (see Motion Reply at 5), the Court does so infra.

factors courts in this District consider when assessing rehabilitation are:

> [1] the defendant's maintenance of familial and societal relationships; [2] letters of support both from community members and prison staff; [3] conduct and disciplinary records while incarcerated; . . . [4] any achievements and education obtained while incarcerated; . . . [5] gains in maturity[;] and [6] other clear signs that a defendant's incarceration has had rehabilitative value.

United States v. Osborne, No. 14-CR-0264, 2026 WL 523162, at *8 (E.D.N.Y. Feb. 25, 2026) (quoting United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, at *5 (E.D.N.Y. May 23, 2024)) (citation modified; further citation omitted). "At minimum, 'rehabilitation requires the court to examine whether a defendant has taken responsibility for his . . . actions and acted to reintegrate [him]self into a productive society.'" Byam, 2024 WL 1556741, at *7 (quoting United States v. Blake, 89 F. Supp. 2d 328, 346 (E.D.N.Y. 2000)). But, more than rehabilitation is required to warrant compassionate release. See United States v. Santana, No. 15-CR-0457, 2025 WL 1940370, at *5 (E.D.N.Y., 2025 July 15, 2025) ("The Court begins by reiterating that, notwithstanding its broad discretion in considering 'all possible reasons for compassionate release,' 'rehabilitation alone shall not be considered an extraordinary reason.'" (quoting Brooker, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t) (citation modified))). And, nonetheless, "a productive institutional record while

64

incarcerated is what is expected . . . ." United States v. Baptiste, No. 15-CR-854, 2024 WL 3425818, at *2 (S.D.N.Y. July 16, 2024) (citation modified).

Here, "Myzick understands he committed crimes that were very serious. But he asserts that he is not anything like he used to be." (Addendum at 3.) In support of his Motion, Defendant has submitted a letter "pleading with [the Court]" to grant it, asserting his incarceration has promoted his growth and maturity; however, the Court observes that conspicuously absent from said letter is any expression of contrition by Defendant for his violent Gang-related behavior and the resulting consequences, notwithstanding his current disavowment of any Gang affiliation. (See Mayzick Letter; see also BOP Nat'l Gang Unit Memo.) Continuing, Defendant: acknowledges the seriousness of his offenses; demonstrates he has availed himself of various courses and programs (which is praiseworthy); offers support letters from his Son, his Son's mother, and a fellow inmate; and, proffers a release plan. Yet, Defendant has not, for example, provided letters of support from prison staff, and has had several disciplinary infractions, with the last such incident occurring in October 2020. (See Inmate Discipline Date, Attach. 2.) Moreover, Defendant remains ranked at a high-risk level for recidivism. (See FSA Recidivism Risk Assessment, Attach. 3.) Thus, given the mixed record before it, the Court finds Defendant's rehabilitation

efforts are good, but not exceptional, and that, in any event, "[m]aintaining good conduct in prison is not uncommon, and indeed is expected." United States v. Garcia, No. 19-CR-0210, 2022 WL 672758, at *2 (S.D.N.Y. Mar. 7, 2022); see also Baptiste, 2024 WL 3425818, at *2; Alvarez, 2020 WL 4904586, at *7 (recognizing "model prison conduct is expected"). Defendant's rehabilitation efforts, including his renouncing the Gang, "is not a basis for a sentence reduction here." Baptiste, 2024 WL 3425818, at *2.

Moreover, even if Defendant's rehabilitation efforts were extraordinary and compelling, because he is unable to demonstrate any other extraordinary and compelling circumstance, such rehabilitation would have no effect. See, e.g., United States v. Latney, No. 18-CR-0606, 2025 WL 1126474, at *8 (E.D.N.Y. Apr. 16, 2025) ("[B]ecause the Court finds Defendant's other proffered reasons for granting his Motion are neither extraordinary nor compelling, the weight his rehabilitation efforts might have added to the Court's calculus of the totality of the circumstances is without effect; hence, there is no ground to reduce Defendant's sentence."); see also United States v. Hernandez, No. 14-CR-0264, 2026 WL 111639, *8 (E.D.N.Y. Jan. 14, 2026) (same; collecting cases).

[Remainder of page intentionally left blank.]

66

ii.  Purported Unusually Long Sentence[18]

Defendant premises his unusually-long-sentence argument not so much on the term of his ten-year sentence for the Vicar Murder Conspiracy conviction, but, rather, on its consecutive nature, i.e., when considered in conjunction with his Winslow Case sentence, Defendant faces an aggregate 23-year sentence.  (See Motion at 6-8; Motion Reply at 4-5.)  As an initial matter, this argument was already considered and rejected by Judge Feuerstein upon sentencing and by the Second Circuit upon appeal.  Indeed, the Circuit Court held the consecutive sentence in the Instant Case was not unreasonable and was within Judge Feuerstein's discretion to impose.  See March 2022 Decision, 2022 WL 777820, at *1-2.  Nothing has changed to morph that argument into an extraordinary or compelling reason to grant a sentence reduction.

Moreover, the Court finds the Government's position on this matter persuasive.  It highlights that in the Winslow Case, Judge Hurley found Defendant's "advisory Guidelines range was 235 to 293 months, but imposed a below Guidelines sentence of only 162

---

[18]  The Court notes it has considered Defendant's Criminal Rule 32 argument in conjunction with his unusually-long-sentence arguments (see Motion at 7-8), which Rule 32 argument this Court views as a variant of his concurrent-sentence argument, an argument already presented to, and rejected by, the Circuit Court.  See March 2022 Decision, 2022 WL 777820, at *2.  In any event, in his Reply, Defendant clarifies his Criminal Rule 32 argument is not meant as an independent basis for finding extraordinary and compelling circumstances.  (See Reply at 3-5.)

months." (Motion Opp'n at 5.) It then asserts the "additional 120 month sentence" imposed in the Instant Case "on the gang conviction", which gang conduct Judge Hurley declined to consider in the Winslow Case, "still puts the combined sentence merely within the advisory Guidelines range of the [Winslow Case Narcotics T]rafficking conviction alone." (Id.) According to the Government, therefore, "the total combined sentence of 282 months [i.e., 162 months (imposed in the Winslow Case) plus 120 months (imposed in the Instant Case),] cannot be seriously considered as unusually long to properly account for all of the conduct for which the [D]efendant was convicted." (Id. (further underscoring "the advisory Guidelines range for the [VICAR Murder Conspiracy] conviction would have been 360 [months] to life but for the statutory maximum sentence of 120 months").) The Court agrees; given this relevant backdrop, there is no basis for finding the sentence imposed here, including consideration of its consecutive nature to the sentence imposed in the Winslow Case, is unusually long; therefore, the aggregate length of Defendant's two, consecutive sentences is not considered extraordinary or compelling. Hence, on this basis, Defendant's Motion is DENIED.

### iii. Family Circumstances

Pursuant to the Policy Statement §1B1.13, the following family circumstances may be considered extraordinary and compelling:

68

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1.B1.13(b)(3)(A)-(D). Upon the record presented, Defendant has not established a family circumstance that is extraordinary and compelling.

As to Issue with Mother's Care: Defendant represents "[h]is mother is currently being cared for in a long-term nursing facility due to her brain damage as a result of a stroke and heart attack she" suffered. (Motion at 6.) Her placement in the facility was a "collective decision made by Mr. Mayzick's siblings

69

and family members" "because his mother requires around-the-clock care and treatment" and "that without a caregiver from within the family, a nursing facility was the only option."  (Id.)  While Defendant claims his mother's "prognosis for recovery is poor", he further states "at the present time her medical condition is stable."  (Id. at 3.)

Defendant asserts that, if released, "he intends to have his mother moved to the family home" where she can be cared for by him as his mother's sole caregiver.  (Id.)  Defendant further baldly asserts his half-brothers cannot care for their mother since one lives out of state and "is not in a position to assist with any of his mothers [sic] care" and the other one suffers from drug addiction, making him unstable and unreliable.  (Addendum at 2.)

Defendant did not provide any medical records to support his assertions regarding his mother; instead, Defendant provides the Court with the name and address of the facility where his "mother is receiving medical care and treatment", informing the Court he is providing said information so the Court "may verify" same.  (See Attach. 7.)  Defendant also provided two letters in support of his mother-based argument: one from a McKenzie Headen, apparently a friend of Defendant's (see Headen Letter, Attach. A, ECF No. 181 at ECF pp.8-9, attached to Motion Reply); and, one from a Troy Burley, presumably another friend of Defendant (see Burley Letter, id. at ECF p.10).  McKenzie Headen states "friends

70

and family members do not know the circumstances of [Defendant's mother's] health, nor how better she is in her condition or how unwell she is." (Headen Letter at 1.) Her letter was "sworn and subscribed" before a notary, but not made under penalty of perjury. (See id. at 2); see also generally Prudential Ins. Co. v. Payne, No. 20-CV-3683, 2024 WL 707299, *3 n.4 (E.D.N.Y. Feb. 20, 2024) (discussing requirement of an affidavit and stating a notarized document without a jurat will not be considered an affidavit in the context of a summary judgment motion). Troy Burley, who does not explain his relationship to Defendant, states:

> I would tend to [Defendant's mother] myself since she is basically a mother to me too but, there was a block put on the visiting list by [Defendant's] brothers and they will not remove it. I've tried on numerous occasions to contact both brothers with no reply.

(Burley Letter.) Yet, despite being unable to visit her, Mr. Burley contends the facility is providing Defendant's mother inadequate care. (Id.) Like Headen's letter, although notarized, Burley's letter is not made under penalty of perjury. (See id.)

While unfortunate, the scenario Defendant presents regarding his mother is neither extraordinary nor compelling within the context of Policy Statement § 1B1.13(b). The Court has no reason to disbelieve Defendant's representations that his mother is in a long-term nursing care facility, and her prognosis of recovery is poor. Nonetheless, Defendant has not presented

71

evidence that he is the only caregiver available to take care of his mother. See, e.g., United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *4 (E.D.N.Y. Dec. 20, 2023) (finding, in the absence of "any evidence substantiating this claim," Defendant's "bald contentions regarding his mother's poor health as grounds for finding an extraordinary and compelling condition [wa]s unavailing"). Rather, what has been put forth shows Defendant's mother is being cared for, albeit not in a way Defendant would like. Defendant's current position also appears to be in tension with his representation that the decision regarding Mayzick's mother's care was a collective familial one, which representation also undercuts the veracity of Defendant's claim that he is his mother's only available caretaker. Indeed, Defendant's present position is more properly viewed as a proffer to take on the role of caregiver; however, that is not what is called for under applicable Policy Statement § 1B1.13(b)(3)(C).

Moreover, Defendant's reliance upon the Headen and Burley letters to establish he is his mother's only available caregiver is unavailing; both letters infer Mayzick's brothers have authority regarding the care of their mother and that Mayzick disagrees with his brothers' decisions. (See Headen Letter; Burley Letter.) Crucially, though, it appears neither Headen nor Burley are competent to testify about the mother's current condition or care, lacking personal knowledge as to both issues. (See id.);

72

see also generally Campbell v. Rite Aid Corp., No. 18-CV-1799, 2020 WL 5554645, at *5 (E.D.N.Y. Sept. 17, 2020) (finding no error in magistrate judge declining to consider affidavit where affiant did not show he was competent to testify on the matters stated within affidavit).  Therefore, their respective beliefs about Defendant's mother's current care are speculative at best and wholly insufficient to carry Defendant's burden of establishing an extraordinary and compelling family circumstance warranting a sentence reduction.  Moreover, to the extent Defendant invites this Court to make inquiries regarding his mother's current condition or care, it declines such invitation; it is Mayzick's burden to establish his claimed circumstance is extraordinary and compelling, and not the Court's.  See Sellick, 2022 WL 16936829, at *1 ("The defendant bears the burden of showing that the circumstances warrant a sentence reduction."); see also United States v. Baker, No. 97-CR-0877, 2025 WL 2733358, at *6 (E.D.N.Y. Sept. 25, 2025) (collecting cases regarding need to provide "several sources of evidence" that defendant was only available caregiver (quoting United States v. Pilitz, No. 17-CR-0053, 2025 WL 2324218, at *5 (E.D.N.Y. Aug. 12, 2025))); Lake, 2023 WL 8810620, at *3 (same; collecting cases).  At bottom, Defendant has failed to carry his burden as to this claim; therefore, on the basis of Defendant's mother-centered only-available-caretaker argument, his Motion is DENIED.

73

As to Issue with Son:  Defendant's teenaged son (hereafter, "Son") has been diagnosed with a mental health issue. (See Addendum at 3; see also Son's Psych Evaluation Report, Ex. 11, ECF No. 175-4 (sealed) at ECF pp.33-41).  In his Addendum, Defendant baldly assert's, while the Son's mother "is not well equipped to handle" [their Son's] issues . . . while handling all other life's daily responsibilities", he is.  (See id.)  And, understandably, Defendant also states he wants to provide his Son "with the love and support of his father" which he claims he can do only "if he is not in prison."  (Id.)

Defendant's wish to play an active role in his Son's upbringing is nearly ubiquitous of every incarcerated parent.  By its ubiquitous nature, therefore, this reason can be neither extraordinary nor compelling, especially as those circumstances are delineated in Policy Statement § 1B1.13(b).[19]  Indeed, this Court has repeatedly stated:

> Defendant's desire to have more involvement in his [child]'s life, while laudable, is not grounds for granting his [compassionate release] Motion.  [T]he Court would be hard-pressed to find an incarcerated parent who does not wish to be a greater part of his or her child's life; by its mere near-universality, this reason for wanting to

---

[19]  For clarity:  To the extent Defendant tries to frame his Son-based argument as an extraordinary and compelling reason pursuant to Policy Statement § 1B1.13(b)(5) (see Motion Reply at 3), the Court rejects that position.  It is not similar in gravity to those circumstances described in Policy Statement § 1B1.13(b)(1)-(4).

> be released from prison is no more than ordinary and provides no support for Defendant's [compassionate release] Motion.

Lake, 2023 WL 8810620, at *4; Hernandez, 2026 WL 111639, *9 (quoting Lake).    It is no different here.    On this basis, Defendant's Motion is DENIED.

As to Issue with Father's Estate:  Defendant alludes to issues with the administration of his father's estate, indicating his father died intestate, notwithstanding Defendant's belief his father was leaving certain real property to Defendant.    (See Addendum at 2-3.)    Apparently, the father's widow, who is not Defendant's mother, has been appointed the Administrator of the father's probate estate and, allegedly, she is not communicative with Defendant about said estate.    (See id. at 2.)    Defendant asserts he cannot effectively address his alleged inheritance rights while incarcerated and "to hire an attorney to represent him in the matter requires money he cannot earn while in prison." (Id.)    While, no doubt, frustrating, this situation is not one of the types of family circumstances contemplated under Policy Statement § 1B1.13.[20]    Therefore, for purposes of the First Step Act, Defendant's father-estate-based argument is neither

---

[20]    Nor does the Court find Defendant's father-estate-based argument to be another circumstance similar in gravity to those described in Policy Statement § 1B1.13(b)(1)-(4).    (See Motion Reply at 3); see also U.S.S.G. § 1B1.13(b)(5).

75

extraordinary nor compelling and does not support granting Defendant's Motion.

-*-*-*-

At bottom, even collectively, Defendant's family circumstances cannot be viewed as extraordinary or compelling. While, no doubt, concerning, these circumstances--to which the Court is sympathetic--do not set Defendant apart such that the circumstances he faces warrant a sentence reduction. Nor, assessed collectively, do the proffered extraordinary and compelling reasons advanced by Defendant warrant granting his Motion for Compassionate Release. Accordingly, finding no extraordinary or compelling reasons, the Motion is DENIED.

c.    The Section 3553(a) Sentencing Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" Jones, 2023 WL 8613867, at *2; see also Keitt, 21 F.4th at 73 n.4 (noting "a district court may rely solely on the § 3553(a) factors when denying defendant's motion for compassionate release"); United States v. Andrews, No. 23-8046-CR, 2025 WL 2938044, at *3 (2d Cir. Oct. 16, 2025) (summary order) (same; quoting Keitt); Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors'

76

is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)); United States v. Mayes, No. 23-6077-CR, 2024 WL 2990909, at *1 (2d Cir. June 14, 2024) (summary order) (same; quoting Jones).  "[A] statement that the district court has considered the statutory factors is sufficient." United States v. Torres, No. 21-2511-CR, 2022 WL 17087048, at *3 (2d Cir. Nov. 21, 2022) (summary order) (quoting United States v. Gammarano, 321 F.3d 311, 315-16 (2d Cir. 2003)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1)-(2).

United States v. Johnson, 671 F. Supp. 3d 265, 283 (E.D.N.Y. 2023).

As Defendant himself acknowledges, the nature and circumstances of his VICAR Murder Conspiracy offense is very serious.  Indeed, the underlying gang-war giving rise to Defendant's conviction in the Instant Case spanned across a year and involved numerous murder attempts, with four people being shot. (See, e.g., Gov't Sent'g Memo, ECF No. 145, at 5-6.)  Further,

77

notwithstanding his subsequent renunciation of his Gang affiliation, Defendant was a Gang leader who directed his younger Gang members to engage in the gang-war. (See id. at 6.) And, as the Government asserts, he is also a career criminal and was a drug dealer. (See Motion Opp'n at 6.)

The Court finds the seriousness of Defendant's offenses is the factor weighing most heavily in favor of denying his Motion. See, e.g., Hernandez, 2026 WL 111639, at *11 (collecting cases); see also United States v. Santos, No. 01-CR-0537, 2024 WL 4212024, at *4 (E.D.N.Y. Sept. 17, 2024) (denying compassionate release motion of hired hit-man who killed the "wrong" people; finding considerable risk that a sentence reduction would "not adequately reflect the seriousness of defendant's offenses, deter similar criminal conduct, or protect the public" (citation omitted)). The seriousness of Defendant's offenses continues to outweigh any purported extraordinary circumstance Defendant has proffered, including his post-Pandemic renunciation of his Gang affiliation. (See BOP Nat'l Gang Unit Memo.) And, even in spite of Defendant's incarceration-based Gang renunciation, "[t]his Court has repeatedly observed in gang-related cases: '[G]ang members need to know their violent, illegal activities are intolerable, and those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences.'" United States v. Gerald, No. 13-CR-0141, 2024 WL

78

4694004, at *7 (E.D.N.Y. Nov. 6, 2024) (quoting Lake, 2023 WL 8810620, at *6; citing United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *8 (E.D.N.Y. May 31, 2024) (quoting Lake)); see also United States v. Henriquez, No. 01-CR-0537, 2024 WL 4450851, at *6 (E.D.N.Y. Sept. 17, 2024) (same).  "It is no different here."  Id.; see also Henriquez, 2024 WL 4450851, at *6 (stating, "[t]he same holds true—and, more so—here, especially when recognizing the underlying crime was an execution-style murder" which "demonstrated disrespect for the law and, more significantly, disrespect for human life").  Moreover, as Judge Feuerstein informed Defendant at his sentencing: "[A] sentence takes into account not just your future intentions but also the conduct which you were engaged in that created this to begin with." (Sent'g Hr'g Tr. at 6.)  Therefore, notwithstanding his subsequent disassociation from the Gang, as astutely stated by the Government, "[a]ny reduction of the [D]efendant's sentence here would undermine the seriousness of [his] conduct."  (Motion Opp'n at 6.) The Court concurs.

        At bottom, to the extent there are any sentencing factors which weigh in Defendant's favor, those favorable factors are outweighed by the combined force of the nature and circumstances of the offense, and the need for the sentence imposed to: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; and, afford adequate

79

deterrence to criminal conduct. See, e.g., Hopkins, 2024 WL 4388454, at *4 (in gang-related case, finding below-Guidelines sentence "continue[d] to be appropriate to, inter alia: promote respect for the law; reflect the seriousness of the offense; provide just punishment; adequately deter criminal conduct; and protect the public from the [d]efendant, thereby satisfying the applicable Section 3553(a) Factors"); see also, e.g., United States v. Brown, No. 18-CR-0604, 2024 WL 4790165, at *7 (E.D.N.Y. Nov. 14, 2024) (same; stating further "for individual and general deterrence purposes, it is necessary that those who participate in the illegal drug trade, which plagues Long Island communities, be sent a clear and unambiguous message that if they do, they will be prosecuted, sentenced to substantial sentences, and be required to serve every day of those sentences" (citation modified)); cf., e.g., Lake, 2023 WL 8810620, at *6 (stating, "those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences"); Wagner, 2024 WL 2801981, at *8 (quoting Lake). Hence, here, it would be antithetical to the purposes of the Section 3553(a) Factors to grant Defendant a sentence reduction. At bottom, Defendant's sentence in the Instant Case of 120 months' incarceration continues to be sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). Based upon consideration of the Section 3553(a) Factors, the Motion is DENIED.

–*–*–*–

To the extent not explicitly addressed herein, the Court has considered Defendant's remaining arguments for a sentence reduction and finds them to be without merit.


CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that, as to Mayzick's **Section 2255 Petition**:

I.   Petitioner's **Motion to Amend** his Section 2255 Petition (ECF No. 182) is **GRANTED**; his additional ineffective-assistance-of-counsel claim has been incorporated into his Petition;

II.  Petitioner's **Petition** seeking to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 168), as amended, is **DENIED** in its entirety; said denial includes denying Petitioner's motion for appointment of counsel, which motion is appended to his Petition;

III. Because there can be no debate among reasonable jurists that Petitioner is not entitled to relief, the Court does not issue a Certificate of Appealability. See 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); Baker v. United States, No. 97-CR-0877, 2022 WL 2803556, at *2 (E.D.N.Y. July 18, 2022) ("On the whole, Petitioner has not made a substantial showing of the denial

81

of his constitutional rights, and the [court's decision] thus does not warrant a Certificate of Appealability."); and

IV. The Clerk of Court is directed to mark as "CLOSED" the corresponding civil case, Case No. 23-CV-1776;

**IT IS FURHTER ORDERED** that, as to Mayzick's **<u>Motion for Sentence Reduction</u>** (ECF No. 175), said Motion is **DENIED** in its entirety; said denial includes denying Petitioner's request for appointment of counsel, which request is incorporated within his Motion; and

**IT IS FURTHER ORDERED** that, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Petitioner at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**
/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  March 31, 2026
        Central Islip, New York